## Case No. 9,946.

### In re MURPHY.

[10 N. B. R. (1874) 48.][1]

District Court, M. D. Tennessee.

BANKRUPTCY—INSANITY—REOPENING THE ADJUDI-
CATION.

Creditor of B. files a petition against him ask-
ing his adjudication in voluntary bankruptcy.
The order to show cause was served on him,
and on his default to answer he was adjudged
a bankrupt, and after the appointment of an
assignee, the property of B. was turned over
to him, but no distribution among the creditors
was ever made. Sometime thereafter, B. comes
into court with a petition, supported by affida-
vits, showing that he was non compos mentis
at the time the debts of the petitioning creditors
were created, as well as at the time of the insti-
tution of proceedings and the adjudication, and
until a very recent period. *Held* that under
the above state of facts, the application to set
aside the default and subsequent adjudication
should be granted, and B. now allowed to show
cause why he should not be adjudged a bank-
rupt.

[Doubted in Re Weitzel, Case No. 17,365.]

In bankruptcy.

NOTE. A jury trial was subsequently had,
and a verdict of insanity at the time of the ad-
judication rendered; whereupon the court or-
dered the assignee to restore the property to
Murphy. [Case unreported.]

## Case No. 9,947.

### In re MURPHY.

[1 Woolw. 141.][2]

Circuit Court, D. Missouri, Oct. Term. 1867.

CONSTITUTIONAL LAW—CRIMINAL OFFENSES—EX
POST FACTO LAW—CIVIL RIGHTS.

1. A person arrested in New Orleans in 1865,
charged with offences committed in Mobile in
1863, and tried at St. Louis, must be discharged
from confinement, in which he is held by sen-
tence of a military commission, if the grand
jury organized next after a list of prisoners so

held is furnished to the judges, do not present
him to the court for trial.

2. The act of March 2, 1867 (14 Stat. 432),
was intended to validate punishment of offend-
ers, which would otherwise be invalid; to pro-
tect from civil process persons who, under the
president's orders, had, in striving to suppress
the Rebellion, rendered themselves amenable to
prosecutions. The provision to secure the first
of these objects is unconstitutional, because it
is ex post facto.

[Cited in Moore v. State, 43 N. J. Law, 222.]

3. So far as that act relates to civil rights,
and affords protection against civil suits, it was
within the competency of congress. Per Miller,
Circuit Justice.

The petitioner, William Murphy, was char-
ged with the commission of grave offences in
1863 at Mobile, in Alabama, and in 1864 at
Memphis. He was arrested in 1864 at New
Orleans, and in 1865, at St. Louis, was tried
by a military commission, found guilty, and
condemned to imprisonment in the penitentia-
ry of Missouri. The president approved the
finding of the commission, and issued his or-
der that the punishment be inflicted. After he
was confined under this authority, a grand
jury in the federal courts of the district had
been organized and attended the term, and
been discharged without a bill of indictment
against the prisoner. At the succeeding term,
he presented this petition for a writ of habeas
corpus, directed to the warden of the peniten-
tiary. The above facts appeared by the re-
turn.

Mr. Noble, Dist. Atty., in support of the
return.

Mr. Garesche, for petitioner.

MILLER, Circuit Justice. The prisoner is
held by virtue of an order of the president of
the United States, under and in conformity
with the sentence of a military commission,
which assembled in the city of St. Louis, in
the fall of 1865, upon three charges. The
first substantially charges him with having, in
1863, conspired, in the city of Mobile, Ala-
bama, with sundry persons, to destroy, within
the Federal lines, steamboats and other prop-
erty. The second charges him with the de-
struction of the Champion, at Memphis, in
September, 1864. The third charges him with
the destruction of the Mepham, between Mem-
phis and Cairo, in September, 1864. Upon
the first two, he was found guilty, and sen-
tenced to a servitude of ten years in the Mis-
souri penitentiary. Upon the third, he was
acquitted.

This class of questions has lately been thor-
oughly discussed by the supreme court, to the
decision of which, this court, whatever be the
individual opinions of its members, will ever
pay the greatest respect. In the case decided
last winter, of Milligan, Bowles, and others,
4 Wall. [71 U. S.] 2, the principles of the law
relative to the trial of the citizen by a mil-
itary tribunal were elaborately examined.
The present, however, differs from that case
in this particular—that the offences for which
Milligan and his companions were tried had

---

[1] [Reprinted by permission.]
[2] [Reported by James M. Woolworth, Esq.,
and here reprinted by permission.]

been committed in Indiana, where martial law had never prevailed, and where the courts were always open for the trial of offences. Here this is not the fact. The record shows that the offences for which Murphy was tried were committed, among other places, at Mobile, where the federal courts were then closed. They were open at the time and place of his arrest, that is, at New Orleans, and also at the time and place at which he is alleged to have committed one of the offences, that is, at Memphis. But in our view of the matter, this is unimportant here. This court must take notice of the fact that, at the time of his trial, the federal courts had resumed their functions, and in any of them the petitioner could have been tried for any of the offences of which those courts had jurisdiction.

The question, then, to be decided is, whether the offence charged comes within the provisions of the act of the 3d of March, 1863 [12 Stat. 755]. The supreme court of the United States unanimously concurred in the opinion that the act of 1863 authorized the president of the United States by proclamation to suspend, during the then existing Rebellion, the writ of habeas corpus in any portion of the United States. Previously he had exercised this power, and the contest had arisen as to whether it had been vested in him or in congress. By this act, congress intended to assert its own right. Conferring the authority upon the president to exercise the power, they intended to imply that they thought he did not possess it by virtue of his own functions. But the 2d section of the act limits the power conferred, and imposes conditions upon its exercise. It provided that while the president, in defence of the public safety, might arrest a person and not be required by a writ of habeas corpus to give the reason for the detention, yet such person was not to be detained beyond a limited period, unless proceedings in the courts of law were instituted against him. The secretaries of state and of war were required to furnish to the judges of the courts of the United States a list of the names of all parties, not prisoners of war, resident in their respective jurisdictions, who then were, or afterwards should be, held in custody by the authority of the president, and were citizens of the states where the courts were open. If the grand jury organized next after the list was furnished, failed to find a bill against a party confined upon the president's order, it was the duty of the court to discharge him. In the construction of this act, majority and minority opinions were given by the supreme court of the United States in the Milligan Case, 4 Wall. [71 U. S.] 2. I quote from the opinion of the minority, rendered by Mr. Chief Justice Chase: "Indeed, the act seems to have been framed on purpose to secure the trial of all offences of citizens by civil tribunals, in states where these tribunals were not interrupted in the regular exercise of their functions."

The opinion of the majority of the court goes still further, and must be binding upon every member of that court, whatever be his individual opinion. It says: "The discipline necessary to the efficiency of the army and navy required other and swifter modes of trial than are furnished by the common law courts; and in pursuance of the power conferred by the constitution, congress has declared the kinds of trial, and the manner in which they shall be conducted, for offences committed while the party is in the military or naval service. Every one connected with these branches of the public service is amenable to the jurisdiction which congress has created for their government; and while thus serving, surrenders his right to be tried by the civil courts; and all other persons" (and these words are emphasized in the decision), "citizens of the states where the courts are open, if charged with crimes, are guaranteed the inestimable privilege of trial by jury." This petitioner was arrested at New Orleans in 1865, charged with offences committed at Memphis in 1864. In both of these places the courts of the United States were open, and perfectly competent to the trial of any offences within their jurisdiction. He was tried at St. Louis, in a state where the process of the courts had never been interrupted. Under the above construction of the act of the 3d of March, 1863, his discharge must be accorded to the petitioner, unless the point made by the district attorney, under the act of congress of the 2d of March, 1867 (14 Stat. 432), be valid. That act provides as follows: "All acts, proclamations, and orders of the president of the United States, or acts done by his authority or approval, after the 4th of March, A. D. 1861, and before the 1st of July, A. D. 1866, respecting martial law, military trials by courts martial or military commissions, or the arrest, imprisonment, and trial of persons charged with participation in the late Rebellion against the United States, or as aiders and abettors thereof, or as guilty of any disloyal practice in aid thereof, or of any violation of the laws or usages of war, or of affording aid and comfort to rebels against the authority of the United States, and all proceedings and acts done or had by courts martial or military commissions, or arrests and imprisonments made in the premises by any person, by the authority of the orders or proclamations of the president, made as aforesaid, or in aid thereof, are hereby approved in all respects, legalized and made valid, to the same extent and with the same effect as if said orders and proclamations had been issued and made, and said arrests, imprisonments, proceedings, and acts had been done, under the previous express authority and direction of the congress of the United States, and in pursuance of a law thereof previously enacted, and expressly authorizing and directing the same to be done; and no civil court of the United States, or of any state, or of the District of Columbia,

or of any district or territory of the United States, shall have or take jurisdiction of, or in any manner reverse any of the proceedings had or acts done as aforesaid; nor shall any person be held to answer in any of said courts for any act done, or omitted to be done, in pursuance of or in aid of any of said proclamations or orders, or by authority or with the approval of the president, within the period aforesaid, and respecting any of the matters aforesaid; and all officers and other persons in the service of the United States, or who acted in aid thereof, acting in the premises, shall be held prima facie to have been authorized by the president; and all acts and parts of acts inconsistent with the provisions of this act are hereby repealed." If this act be valid, the prisoner must be detained. It is evidently intended to make two provisions—the one, to validate the punishment of offenders, which would otherwise be illegal; the other, to protect from civil process the officers and others who, as subordinates of the president, have striven to put down the Rebellion, but whose acts have rendered them amenable to legal proceedings. So far as the first point is concerned, the law is unconstitutional; undoubtedly so. No clearer case of an ex post facto law could be framed. Its effect is to hold men in confinement for offences not punishable at the time they were committed, and to detain such persons in a servitude imposed by a court which had no jurisdiction to try them.

I had the honor of presenting the minority view in the cases decided last winter, generally known as the "Test Oath Cases." Ex parte Garland, 4 Wall. [71 U. S.] 382. In that opinion I entered into an exposition of the characteristics of an ex post facto law; and though I sought to qualify the positions held by the majority, yet, even under my views, as there expressed, this act, so far as its penalties are concerned, is clearly ex post facto. All laws which decree the punishment of an act not punishable at the time of its commission are ex post facto. The prisoner, up to the time of the passage of this law, was certainly illegally imprisoned, because tried by and held under the sentence of a court which had no jurisdiction of his person or of his offence. If he be remanded, it will be under an act passed subsequent to his offence, and even to his conviction. Can any law be more clearly ex post facto? However unpleasant it may be to declare an act of congress unconstitutional, yet, in a case so clear as this, we have no hesitancy as to our duty. We are of opinion that this petitioner is entitled to his discharge, and that the act of congress cannot be invoked to prevent it. But while declaring the invalidity of a part of that law, I deem it my duty, speaking only on behalf of myself, and not for any other member of the court, in order to prevent misapprehension, to say, that it is not necessary to the decision of the present cause to pass upon the validity of that part of the act of congress which gives immunity to the officers of the government. To that provision of the act, the views expressed in respect of its other provision have no application, and I am not required to pass upon it. My own impression is, however, that so far as it relates to civil rights, and affords a protection merely against civil suits, it was within the competency of congress to protect the officers of the government, by the exercise, as in this instance, of all its power. The prisoner will be discharged from the custody of the warden of the penitentiary. But inasmuch as the finding of the military court must be regarded by this court as prima facie evidence of his guilt of the grave offences with which he is charged, we will reserve the judgment until to-morrow, in order to enable the district attorney to inquire whether he should be remanded to the custody of an officer, to be sent to Tennessee or Louisiana for trial.

---

MURPHY (BENSUSAN v.). See Case No. 1,329.

MURPHY (BRUCE v.). See Case No. 2,047.

---

## Case No. 9,947a.

### MURPHY v. BYRD.

[Hempst. 211.] [1]

Superior Court, Territory of Arkansas. Jan., 1833.

APPEAL—TERRITORIAL COURTS OF ARKANSAS—SUM UNDER ONE HUNDRED DOLLARS.

An appeal does not lie to the superior court in cases where the sum in controversy is less than one hundred dollars.

Appeal from Conway circuit court.

[This was a suit by Benjamin Murphy against Richard C. Byrd.]

Before JOHNSON, ESKRIDGE, and CLAYTON, JJ.

OPINION OF THE COURT. This is an appeal from the Conway circuit court, and a motion has been made by the appellee to dismiss it on the ground that the sum in controversy between the parties being under one hundred dollars, the appeal was improperly granted, and this court has not jurisdiction. Whether this court has jurisdiction in cases in which the sum in controversy in the court below is under one hundred dollars, depends upon a proper construction of the several acts on the subject. The act of 1807, (Geyer's Dig. § 54, p. 261,) the act of congress of 1812, (Geyer's Dig. p. 34,) and the organic law of Arkansas, (Acts of 1818,) all in substantially the same language, provide that the superior court shall have appellate jurisdiction in all civil cases in which the amount in controversy shall be one hundred dollars or up-

---

[1] [Reported by Samuel H. Hempstead, Esq.]

wards. The language of the several acts cited are too plain to admit of a doubt. It is manifest that this court has not jurisdiction by appeal when the sum in controversy is under one hundred dollars. But it is contended that the act of congress of the 17th of April, 1828 [Bioren & Duane's Laws, vol. 8, p. 34], gives an appeal to this court in all cases without regard to the amount in controversy. The language of the act is, that "the party aggrieved shall be at liberty, by appeal, writ of error, or certiorari, to remove his suit to the superior court for further trial." This language, it is true, is very broad, but it is not incompatible with the provisions of the several acts before cited, and cannot be understood as having repealed them. The object of the act of 1828 was to legalize certain acts of the legislature of Arkansas, and to provide for the appointment of a fourth judge for this territory; and though the appellate jurisdiction of this court is provided for, it could not have been the intention of congress to repeal the act of 1807 regulating appeals, nor could it have been designed to repeal the provisions of the acts of 1812 and 1818 fixing the jurisdiction of this court in cases of appeal. This appeal must be dismissed. This court is governed in its proceedings by the rules of the common law and the act of 1807. The act of 1807 expressly allows a writ of error, as a matter of right. Cases in which the sum in controversy is less than one hundred dollars, may be brought to this court by writ of error, but not by appeal. Geyer's Dig. 263. Appeal dismissed.

[For another action between the same parties, see Case No. 9,947b.]