## Case No. 3,815.

### In re DERBY.

[6 Ben. 232; 8 N. B. R. 106; 6 Alb. Law J. 422.] [1]

District Court, S. D. New York. Nov. Term, 1872.

BANKRUPTCY—JURISDICTION — INFANT—RATIFICATION.

1. Infants, in respect to their general contracts, are not embraced within the provisions of the bankruptcy act [of 1867 (14 Stat. 517)], as subjects of either voluntary or involuntary bankruptcy.

2. On the 7th of December, 1871, a petition in involuntary bankruptcy against D. was filed by S., who alleged, as the act of bankruptcy, the making by D. of a chattel mortgage to B. A. & W., on November 14th, 1871, he being then insolvent. D. was adjudged a bankrupt, and an assignee was appointed. On the 1st of December, 1871, an action was commenced in a state court by P., as guardian ad litem of D., as an infant, against B. A. & W., to recover for an alleged conversion by them of the goods covered by the chattel mortgage. The assignee in bankruptcy, after his appointment, filed a bill in equity against B. A. & W. to recover for the alleged conversion of the same goods. Thereupon B. A. & W., in April, 1872, filed a petition in the bankruptcy court, praying that the adjudication of bankruptcy against D. might be set aside, alleging, among other things, that D. was an infant when the petition was filed against him, which fact was, on a reference, established to be true. On the hearing, D., who had now become of age, presented a petition praying, among other things, for the confirmation of the bankruptcy proceedings against him: Held, that B. A. & W. were in a position to entitle them to ask the interposition of this court to vacate the adjudication.

[Cited in Re Hatje, Case No. 6,215; Re Austin, Id. 662; Re Jonas, Id. 7,442; Re Donnelly, 5 Fed. 786.]

3. As D. was an infant at the time of the filing of the petition, the court had no jurisdiction to make the adjudication.

[Cited in Re Bergeron, Case No. 1,342.]

4. The petition filed by D., after he came of age, for a confirmation of the bankruptcy proceedings, could not give the court jurisdiction.

5. As D. was an infant, the giving of the mortgage to B. A. & W. was not an act of bankruptcy, because it was not an absolute transfer, but was subject to his election to affirm or disaffirm it when he came of age.

6. The adjudication, and all the proceedings had thereupon, must be vacated.

[In bankruptcy. In the matter of Walter S. Derby.]

Samuel Brown, for Barton, Alexander & Waller.

Levi Gray, for Stevens and assignee.

BLATCHFORD, District Judge. On the 7th of December, 1871, Frederick Stevens filed in this court a petition in involuntary bankruptcy against Walter S. Derby. The debt set forth in the petition was alleged to be for goods sold to Derby in October and November, 1871. The act of bankruptcy alleged was the execution by Derby, while in-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 6 Alb. Law J. 422, contains only a partial report.]

solvent, on the 14th of November, 1871, to the firm of Barton, Alexander & Waller, of a chattel mortgage, to secure a claim of $2,100, payable on demand, of his entire stock of goods and the fixtures in his store, with intent to give a preference to them, of which mortgaged property, it was alleged, they took possession three days afterwards. On the petition, an order to show cause was issued, returnable December 16th, 1871. On proof of the service of the order and of a copy of the petition on Derby on the 9th of December, 1871, an adjudication of bankruptcy was made against him on the 18th of December, 1871, to which day the matter had been adjourned. The proof of service was to the effect that the person making it went to the dwelling-house which was the last and usual place of abode of Derby in this district, and rang the door bell; that a woman of mature age came to the door, who appeared to be, and acted as if she was, mistress of the house; that the person inquired for Derby by his full name; that she answered that he was not in, and declined to give any further information concerning him; and that the person then delivered to and left with her a copy of the petition and of the order, and stated to her that they were for Derby.' Neither on the return day, nor on the adjourned day, did Derby appear, although called in open court; and the court was not advised that he was not of full age. The case was referred to a register, and a warrant was issued, and Frederick Dodsworth was elected assignee.

On the 5th of April, 1872, the said Barton, Alexander & Waller filed in this court a petition setting forth the execution of the mortgage to them by Derby, on a part of his stock, to secure $2,199.40, due for the purchase money of the greater portion of the mortgaged goods; that the mortgage was not taken in violation of the bankruptcy act, or to obtain a preference; that, on the 27th of November, 1871, Derby carried away and converted to his own use all his stock and goods, except some show cases and rubbish, which rubbish the petitioners afterwards sold under their mortgage, but realized nothing above expenses of sale; that, on the 1st of December, 1871, one Purdy, as guardian ad litem of Derby, as an infant, appointed by a state court on the 29th of November, 1871, brought a suit in that court against the petitioners, to recover $4,000, as damages for the alleged conversion by them of the goods covered by the mortgage, claiming that the mortgage was void by reason of the infancy of Derby; and that said cause proceeded to an issue on the 12th of March, 1872, by complaint, answer, and reply, and was still pending. The petition then sets forth the filing of the petition in bankruptcy, and the issuing of the order to show cause, and alleges that said order was not left at the last or usual place of residence of Derby; that Derby did not reside, at the time, at the

house where it was left; that the party serving it was so informed; that it did not come into the possession of Derby; that he did not appear in the bankruptcy proceedings, either in person or by attorney or guardian; that the claim of the petitioners against him amounts to more than two thirds of his entire indebtedness; that, at the meeting of creditors to elect an assignee, the petitioners were not allowed to vote; that the petitioners then and there filed with the register, and gave to the creditors, notice of the alleged infancy of Derby; that they afterwards served on the assignee notice of such alleged infancy, and of the pendency of such suit in the state court; that thereafter, the said assignee filed in this court a bill in equity against the petitioners, claiming to recover from them $5,000, as damages for the alleged conversion of the same goods involved in the suit in the state court; that the petitioners have made every effort to find Derby, but have been unable to communicate with him or to discover the property; that, during the dealings of the petitioners with Derby, he was held out to them as, and they believed him to be, a person of full age; that in fact, he was, and still now continues to be, an infant, under the age of twenty-one years, and incapable of contracting a debt or legal obligation; that Stevens never had a demand against him capable of being enforced at law, and the alleged debt to Stevens, on which the adjudication rested, was not a legal debt; that, by reason of such infancy, the said adjudication is void, as against the petitioners; and that the rights of the petitioners are prejudiced by the said adjudication, as they are subjected to two separate suits for one cause of action. They pray that the adjudication and the proceedings thereon be vacated, and the assignee be enjoined from prosecuting his suit.

On such petition and affidavits annexed to it, and on the proceedings herein, an order was made requiring Stevens and the assignee to show cause why the adjudication and proceedings had thereupon should not be vacated, on the ground that, at the time of the adjudication. Derby was an infant, and staying, in the meantime, all proceedings in the suit by the assignee. In answer, Stevens and the assignee set forth, by affidavit, that the sale of goods by Stevens to Derby, on credit. was made on the recommendation of the petitioners as to Derby's financial condition; that, a few days after such sale, the petitioners, by threats of legal proceedings, procured the mortgage which covered the goods so sold by Stevens to Derby; that Derby is a married man, and has been in business for himself for several years, and is over twenty-one years of age; that the petitioners have never proved any claim in bankruptcy, as creditors of Derby; that the house where the petition and order were left was the last and usual and known place of residence of Derby in New York; that Derby knew of the pendency of

the bankruptcy proceedings from their commencement; and that, on the 5th of March, 1872, a final order was entered in the suit in the state court, enjoining Derby from further prosecuting it, and authorizing the assignee, as such, to be substituted as plaintiff in it, and to prosecute it for the benefit of the creditors of Derby, but the assignee has no intention of so doing, and intends to rely on his suit in this court.

The question of the actual infancy of Derby at the time of the adjudication being in doubt, the court made an order for the taking of proof before a referee, as to the age of Derby at the date of the adjudication. Such proof is now before the court, and the motion to vacate the adjudication has been heard. It clearly appears that Derby did not reach the age of twenty-one years until the 14th of May, 1872.

On the hearing, Derby presented to the court a petition, verified by him on the 1st of June, 1872, and of which a copy was served on the attorneys for the petitioners on the 10th of June, 1872, setting forth that he resided, for six months immediately preceding the filing of the petition to Stevens, in this district, and had continued to reside there, and now resides there; that he was owing debts at the time of filing said petition, and is now owing debts, which he is unable to pay, to an amount exceeding $300; that he was indebted, at the time of filing said petition, to Stevens, in the sum mentioned in said petition, and to three other creditors, whom he names, in sums which he names, the aggregate of the four being $895.01; that at the time of contracting such debts he was a minor, but was engaged in business on his own account; that said debts were just, and were contracted in good faith, and would have been paid long since had not Barton, Alexander & Waller, on the 17th of November, 1871, wrongfully seized his entire stock of goods, of the value of about $5,000, and converted the same to their own use, and thereby broken up his business, and deprived him of the means of paying his just debts; that he arrived at the age of twenty-one years on the 14th of May, 1872; that he now ratifies and confirms the said four debts (naming them, but not including that to Barton, Alexander & Waller), and also ratifies and confirms the proceedings in bankruptcy herein, and the adjudication and proceedings thereunder; that he has been and is willing to surrender his estate and effects for the benefit of his said creditors, and desires to obtain the benefit of the bankruptcy act; that the said four creditors are all the creditors who have proved claims against him in the bankruptcy proceedings; and that he has no property except that which was taken possession of by Barton, Alexander & Waller, and had no other property at the time the petition of Stevens was filed. He therefore prays that the proceedings in bankruptcy, commenced on the petition of Stevens, may be continued, perfected and carried through,

and that he may be decreed to have a discharge from his debts.

In answer to this petition of Derby, it is stated, on the part of Barton, Alexander & Waller, by affidavit, that they did not take possession of the goods of Derby, but that Derby, on the 17th of November, 1871, before daybreak, carted away from his store his entire movable stock, leaving only the fixtures and some rubbish, and has ever since retained said goods and concealed himself from said firm; and that the removal of the goods took place in the presence of three policemen, who knew Derby, and did not interfere because they knew him to be the proprietor of the store.

On the part of Barton, Alexander & Waller, it is contended, that, as Derby was an infant when he contracted the debt to Stevens, there was no provable debt due to Stevens at the time of the adjudication, and the proceedings in bankruptcy were unauthorized; that the mortgage to Barton, Alexander & Waller was void because of the infancy of Derby at the time it was given, and, therefore, Derby committed no act of bankruptcy by giving it; that Derby, by the suit in the state court, which is still pending, repudiated the mortgage; that he still repudiates it and the debt secured by it, by disowning it in his petition, and not therein ratifying and confirming it; that, as no title passed to Barton, Alexander & Waller by the mortgage, they obtained thereby no preference; that the petition merely ratifies the four claims proven during the infancy of Derby, for the purpose of a discharge therefrom, and such ratification does not amount to a promise, since he became of age, to pay such debts, so as to create a liability therefor, on which suits could be brought; that the claim of Barton, Alexander & Waller is as just and fair a claim as any one of the other four; that the adjudication was void on the grounds, (1) that there was no debt due to Stevens at the time of the adjudication; (2) that the act of bankruptcy alleged in the petition of Stevens was not committed; (3) and that the court obtained no jurisdiction of the person of Derby; that the void adjudication cannot be rendered valid by any subsequent consent or ratification by Derby; and that Derby, if he wishes to become a bankrupt, must now petition in the usual way.

On the part of the assignee and of Stevens, it is urged, that, if these proceedings are dismissed, all remedy against Barton, Alexander & Waller, under proceedings in bankruptcy, is, by lapse of time, gone; that, if necessary, the proceedings should be allowed to be amended, by having a guardian ad litem appointed for Derby nunc pro tunc; and that there is nothing in the language of the bankruptcy act of 1867 that forbids its application to an infant, and its language is broad enough to cover the case of an infant.

I entertain no doubt that Barton, Alexander & Waller are in a position to entitle

them to ask the interposition of this court to vacate the adjudication. The fact of the pendency of the suit in this court brought by the assignee against them, and the fact that they are as fully creditors of Derby as are those who have proved their debts against him, except in the particular that they have not formally proved their debt, give them an interest to protect, which brings them within the principles laid down in Re Boston, H. & E. R. Co. [Case No. 1,677], and demands that the court should, at their instance, inquire whether the adjudication in this case can be sustained.

The word "infant" or "minor" is not found in the bankruptcy act. The language of the 39th section, "any person residing and owing debts as aforesaid," which refers to the 11th section, and the language of the 11th section, "any person residing within the jurisdiction of the United States," is broad enough to include an infant. So, the language of the 103d section of the insolvency law of Massachusetts (Gen. St. Mass. 1860, c. 118), authorizes involuntary proceedings against "any person," not mentioning infants by words of inclusion or exclusion. In the case of Farris v. Richardson, 6 Allen, 118, a minor had been put into insolvency by some of his creditors, by default, on a notice left at his last and usual place of abode, it not being made known to the judge of insolvency that he was a minor. He had obtained credit from the petitioning creditors on the strength of representations that he was of full age. A creditor of his, who held promissory notes of his, and had attached his property thereon, before the insolvency proceedings were commenced, brought a bill of equity, to restrain such proceedings against the judge, the messenger and the petitioning creditors. The court held the proceedings to be void, on the ground that they had been prosecuted without the appointment of any guardian ad litem for the infant. It says: "In the absence of any express legislative enactment, or some clear implication arising from an existing provision of law, we cannot sanction proceedings in their nature judicial, which involve so wide a departure from the principles and practice on which civil suits against infants are uniformly conducted in courts of law." But it abstains from deciding whether the provisions of the insolvent laws of Massachusetts were at all applicable to infants, even when duly represented by a prochein ami or a guardian ad litem. It suggests, however, that there is fair reason to doubt whether the legislature intended to include infants among those entitled to the benefit of, or subject to the duties and limitations created by, the insolvent laws.

It cannot be doubtful that an adjudication against an infant who does not appear by a guardian ad litem, cannot be upheld. It is an adjudication against a person who has no legal existence, so as to be proceeded against in a court as if he were of full age. He is called upon to show cause, when he cannot, by himself, be heard to do so.

It is supposed, however, that this is a matter personal to the infant, and that the defect is cured, if the infant, after he becomes of age, comes into court and waives the irregularity by ratifying the proceeding; or, that the defect may be cured by the action of the court now, under such ratification, in appointing a guardian ad litem for the infant, for the time of his infancy, nunc pro tunc, as of the return day of the order to show cause. It will not be necessary, in the view I take of this case, to discuss the question thus suggested, for I am of opinion that infants, as subjects of either voluntary or involuntary bankruptcy, are not embraced within the provisions of the act of 1867, at least, in respect to their general contracts.

I have not been referred to any decision on the subject under the present act. Under the act of 1841 [5 Stat. 440], it was said by Judge McLean, in Re Book [Case No. 1,637], that that act extended to infants. The report of that case is very meagre, and throws little light on the question.

The general contracts of an infant having no force, if disaffirmed by him after attaining his majority, it is idle for him to set forth, in a voluntary case, commenced during his infancy, a schedule of his creditors, and idle for them to prove their debts during his infancy, for, the whole proceedings must be in vain, if the debts are disaffirmed by him after he attains his majority. And it does not comport with the proprieties of a court of justice, that it should solemnly entertain proceedings brought by an infant bankrupt voluntarily, with the surrender of his property to the court, and its granting of protection thereon, and its injunctions against pending suits, and then permit him afterwards to demand the restoration of his property and the virtual dismissal of the proceedings, against the will of the creditors set forth in his schedule, and who have suffered, perhaps, from the effect of the injunctions of the bankruptcy court, on the ground that, having arrived at full age, he disaffirms the debts so set forth.

So, in an involuntary case, the property of the infant bankrupt would be taken by the court, injunctions would, after adjudication, be granted against pending suits, a schedule of his creditors would be furnished by the bankrupt, and their debts would be proved, to no purpose, for, his disaffirmance of the debts, after becoming of age, would necessitate the restoration to him of his property, without any relief to the creditors.

But there are other difficulties attendant on an involuntary case. The debt of a petitioning creditor must be a debt provable at the time the petition is filed. A debt arising out of a general contract by an infant cannot be said to be a provable debt, or a debt at all, within the 19th section of the act, or to be a contingent debt, within that section.

In the case of a contingent debt, the party is absolutely bound by the obligation into which he has entered, but, by its terms, the debt is not to be paid except in a certain contingency. An infant is not absolutely bound by the obligation into which he has entered. So, also, in an involuntary case, the act of bankruptcy must be one which the party was capable of at the time of committing absolutely, and did commit absolutely. An infant cannot make an absolute valid transfer of his property, within section 39, and, although he may be capable of committing some of the other acts of bankruptcy specified in that section, it is not to be intended that congress designed to make any of the specified acts of bankruptcy applicable to a person who could never absolutely commit the one involving a transfer of property. All the acts are specified in the same general language, which is broad enough to include all persons, including infants, and persons non compos mentis, and those under other legal disabilities; but it ought not to be construed as including, in respect to any of the specified acts, any person who is not in a personal status to be capable of committing absolutely all the specified acts. The law should be construed as uniform in its scope, as to the persons it applies to.

Another difficulty would arise in respect to infants. By the 43d section, at the first meeting of creditors, three-fourths in value may resolve to have the estate wound up by a trustee. If the court approves, the bankrupt is to transfer all his property to the trustee, who is then to hold it "in the same manner and with the same powers and rights, in all respects, as the bankrupt would have had and held the same if no proceedings in bankruptcy had been taken." What could a trustee do under such a transfer from an infant? He could do no more, in regard to disposing of the property, during the minority of the infant, than the infant himself could have done. Every proceeding would have to be suspended, to await the action of the infant, on his becoming of age, and the creditors would be prevented from going on with any proceedings in any tribunal.

It cannot be supposed that congress intended that the jurisdiction of the bankruptcy court, or its effective procedure, should thus depend on the future personal action of the subjects of its process. It is not perceived why an infant could not rightfully ask, at least, in an involuntary case, if not in all cases, that the court should suspend all allowances of proofs of debt, and all distribution of his property, until he should become of age, and be allowed the privilege of disaffirming the debts sought to be proved. If he should disaffirm all of them, he could receive his discharge, and have all his estate returned to him. The only action of the court in such a case would have been to preserve his property for him, and give him a discharge from debts in respect to which, if

sued, a plea and proof of infancy would have been fully available to free him from liability. It is not supposable, in the absence of express directions to that effect, that congress intended that the bankruptcy courts should exercise such a jurisdiction in respect to the estates of infants.

For these reasons, I am of opinion, that Derby, having been, in fact, an infant, when adjudicated a bankrupt, was not a proper subject for the action of the court, for want of authority in the court to take cognizance of his case. The question is one of jurisdiction. Therefore, the fact that Derby now comes into court, and states that he ratifies and confirms the proceedings, can have no effect to give to the court authority and jurisdiction as of the time of the adjudication. In re Lady Bryan Min. Co. [Case No. 7,978].

But, even giving full effect to Derby's present petition would not help the case. The giving of the mortgage to Barton, Alexander & Waller was no act of bankruptcy, because it was not an absolute transfer. It was subject to his election to affirm or disaffirm it when he became of age. His present petition contains no affirmance of the mortgage, and cannot be otherwise regarded than as a disaffirmance of it. A general confirmation and ratification of the adjudication cannot, in view of the whole petition, be construed as an affirmance of the mortgage which was the basis of the adjudication. It was not so designed.

It is not intended to express any opinion as to whether an infant may or may not voluntarily petition in respect of contracts for which he is liable, such as debts for the value of necessaries.

The present petition of Derby cannot be received as a proper voluntary petition, as its prayer merely is, that the former proceedings may be continued and carried through. As it can have no retroactive effect, an order must be entered vacating the adjudication herein, and all the proceedings had thereupon.