**In re Brittany Gricherry MURRAY, Debtor.**

**Bankruptcy No. 95–07124–AT3–13.**

United States Bankruptcy Court, M.D. Tennessee.

July 31, 1996.

Perry Happell, Nashville, TN, for Debtor.

Henry E. Hildebrand, III, Chapter 13 Trustee, Nashville, TN.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The question presented is whether the mother of a seven year old debtor has capacity to file a Chapter 13 petition as "next friend" for her daughter. The petition is proper under Rule 17(c) of the Federal Rules of Civil Procedure. The following are find-

ings of fact and conclusions of law. FED. R.BANKR.P. 7052.

## I

This Chapter 13 debtor was seven years old at the petition on October 6, 1995. The petition was signed "Brittany Gricherry Murray by Dorcas Renee Murray, mother." Below the debtor's name, the petition states "by next friend and mother Dorcas Renee Murray." In a similar fashion, the debtor's mother executed the acknowledgment of a consumer debtor, the application and affidavit to pay filing fees in installments and the declaration concerning the debtor's schedules.

The debtor owns a house that passed to her before the petition at the death of her natural father. The house was mortgaged by the father to Boatman's National Mortgage, Inc. Boatman's is the only creditor in this Chapter 13 case.

The debtor receives social security survivor's benefits of $908 per month. The Social Security Administration recognizes the debtor's mother as custodian and guardian of the debtor. No court has authorized the debtor's mother (or anyone else) to represent the debtor.

The debtor's proposed plan would cure defaults and maintain payments on the home mortgage using the debtor's social security benefits. Boatman's did not object to confirmation. The essence of the Chapter 13 trustee's objection to confirmation is that this debtor is not eligible for Chapter 13 relief because, absent state court approval, a parent lacks authority to file a Chapter 13 petition for a minor.[1]

## II  ELIGIBILITY

No provision of the Bankruptcy Code requires that a Chapter 13 debtor be an adult. A voluntary bankruptcy case is commenced by the filing of a petition "by an *entity* that may be a debtor under such chapter." 11 U.S.C. § 301 (emphasis added).

---

**1.** Feasibility and "good faith" issues raised in the trustee's objection to confirmation were not earnestly contested and are resolved in favor of the debtor. This minor has "regular income" sufficient to fund the proposed plan. There is no evidence of bad faith in this effort to save the home acquired at the death of the debtor's father.

Among the entities that may be a debtor is a *"person* that resides or has a domicile ... or property in the United States." 11 U.S.C. § 109(a) (emphasis added). For title 11 purposes, " 'person' includes individual." 11 U.S.C. § 101(41). An *"individual* with regular income" is eligible for Chapter 13 relief. 11 U.S.C. § 109(e) (emphasis added). Section 109(e) specifically excepts stockbrokers and commodity brokers from the individuals with regular income who are eligible for Chapter 13 relief.[2] The plain language of the Code does not contain or suggest age exceptions to the ordinary meaning of "individual."

*Eligibility* of an individual for Chapter 13 relief is not limited by reference to state law.

Contrast 11 U.S.C. § 109(c) which limits the eligibility of an entity to be a debtor under Chapter 9 "if and only if such entity ... is specifically authorized, ... to be a debtor ... by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter."

Cases decided under the Bankruptcy Code support or at least assume that infants and other incompetents are eligible for voluntary bankruptcy relief.[3] Cases decided under the former Bankruptcy Acts split on the question whether a minor or incompetent was eligible for bankruptcy relief; the better reasoned view supported eligibility especially where the minor or incompetent owed debts that

---

**2.** The analogous exception to eligibility in Chapter 11 cases in 11 U.S.C. § 109(d) was cited by the Supreme Court as evidence that Congress carefully crafted the eligibility rules in § 109 and the courts should not casually infer uncodified exceptions. *See Toibb v. Radloff*, 501 U.S. 157, 161, 111 S.Ct. 2197, 2199–2200, 115 L.Ed.2d 145 (1991):

> The Code contains no ongoing business requirement for reorganization under Chapter 11, and we are loath to infer the exclusion of certain classes of debtors from the protections of Chapter 11, because Congress took care in § 109 to specify who qualifies—and who does not qualify—as a debtor under the various chapters of the Code. Section 109(b) expressly excludes from the coverage of Chapter 7 railroads and various financial and insurance institutions. Only municipalities are eligible for the protection of Chapter 9. § 109(c). Most significantly, § 109(d) makes stockbrokers and commodities brokers ineligible for Chapter 11 relief, but otherwise leaves that Chapter available to any other entity eligible for the protection of Chapter 7. Congress knew how to restrict recourse to the avenues of bankruptcy relief; it did not place Chapter 11 reorganization beyond the reach of a nonbusiness individual debtor.

**3.** *See Wieczorek v. Woldt (In re Kjellsen)*, 53 F.3d 944, 946 (8th Cir.1995) (where state court had appointed guardian having exclusive control over incompetent's property, holder of durable power of attorney was not proper person to file bankruptcy petition); *Brown v. Financial Enterprises Corp. (In re Hall)*, 188 B.R. 476, 483 (Bankr. D.Mass.1995) ("A guardian may file a bankruptcy petition on behalf of an incompetent person even if the guardian is not specifically authorized by a court to do so."); *In re Kjellsen*, 155 B.R. 1013, 1018 (Bankr.D.S.D.1993) (Bankruptcy Code "contains no rule or provision that requires

a debtor to be mentally competent in order to seek relief in bankruptcy"), *rev'd on other grounds, Wieczorek v. Woldt (In re Kjellsen)*, No. 93–4137, 1994 WL 904681 (D.S.D. Mar. 23, 1994), *aff'd* 53 F.3d 944 (8th Cir.1995); *In re Glorian Muniz*, No. 3–93–00713 (ESL) (Bankr. D.P.R. Jan. 5, 1994) (unpublished) (A minor is an individual who may file a bankruptcy petition.); *In re Smith*, 115 B.R. 84, 85 (Bankr.E.D.Va. 1990) (A person under a disability may file bankruptcy through a guardian or next friend. A guardian may file a petition "on behalf of a legally incapacitated person, provided the order appointing the guardian authorizes the guardian to file bankruptcy on the debtor's behalf."); *In re Healy*, 1989 WL 149679 (Bankr.D.Md. Nov. 17, 1989), No. 89–4–2488–PM (unpublished) ("The court finds no support for the proposition that a person under mental disability is barred from filing a bankruptcy case under Chapter 7 or that express court authorization is required before such a case may be filed by a guardian on behalf of an incompetent."); *In re Jones*, 97 B.R. 901, 903 (Bankr.S.D.Ohio 1989) (appointment of state court receiver does not preclude bankruptcy petition by debtor judged mentally incompetent postpetition); *In re Zawisza*, 73 B.R. 929, 931, 931 (Bankr.E.D.Penn.1987) ("[A]n incompetent person is not barred from filing a voluntary bankruptcy petition...."); *In re Kirschner*, 46 B.R. 583, 585 n. 1 (Bankr.E.D.N.Y.1985) ("A guardian may file a voluntary petition in bankruptcy where a court order authorizes such a filing."). *See also* 1 Norton, Bankruptcy Law and Practice 2d § 18:3 at 18–6 (1995) ("... voluntary petitions may be filed by infants, ... regardless of any specially protective law that may serve as a defense to claims outside of bankruptcy."); Daniel R. Cowans, Bankruptcy Law and Practice, § 3.6 at 239 (6th ed.1994) (nothing in Code expressly covers availability of voluntary and involuntary petitions of minors; prior law permitted

were not voidable, for example, upon reaching majority.[4]

at least voluntary petitions where debts were enforceable against minor).

4. Under the Bankruptcy Act of 1841, it was held that infants were entitled to the benefits of bankruptcy and could file without appointment of a next friend. *See* Note 1 (annotation found at footnote to *In re Dunnigan Bros.*, 2 Am.Bankr. Rep. 628 n. 1 (D.Mass.1899)), 2 Am.Bankr.Rep. 628 n. 1, *citing, In re Book*, 3 F.Cas. 867, 868 (C.C.D.Ohio 1843) (No. 1,637) ("[a]n infant . . . may claim the benefit of the bankrupt law [and] . . . may . . . [petition] in his own name.").

Under the Bankruptcy Act of 1867, courts held infants were not subject to voluntary or involuntary bankruptcy with respect to their general contracts. *See In re Weitzel*, 29 F.Cas. 604, 605 (W.D.Wis.1876) ("The bankrupt act authorizes any person owing debts to be adjudged a bankrupt, either on his own petition or the petition of his creditors. This would not include infants and feme coverts, because they do not ordinarily owe debts, for want of legal capacity to contract. A party to be adjudged must have capacity to contract binding obligations."); *In re Derby*, 7 F.Cas. 513, 516 (S.D.N.Y.1872) (No. 3,815) (In an involuntary case "an adjudication against an infant who does not appear by a guardian ad litem, cannot be be upheld. It is an adjudication against a person who has no legal existence, so as to be proceeded against in a court as if he were of full age. . . . I am of opinion that infants, as subjects of either voluntary or involuntary bankruptcy, are not embraced within the provisions of the act of 1867, at least, in respect to their general contracts."). *Compare Woolridge v. McKenna*, 8 F. 650, 674 (C.C.W.D.Tenn.1881) (in *dicta*, in a non-bankruptcy case decided after repeal of Bankruptcy Act of 1867, citing English precedent, "an infant might institute bankruptcy proceedings in his own name, and it is a general rule he may, by next friend, pursue any remedy others have.").

Several cases decided under the Bankruptcy Act of 1898 support eligibility of infants and other incompetents: *Hilliard v. McCrory*, 110 Colo. 369, 134 P.2d 1057, 1059 (1943) (The state court validly appointed a mental incompetent's conservator and directed filing of a bankruptcy petition. The state court "did not divest itself of jurisdiction but exercised it. It appointed the conservator, entertained and granted his petition for the proceeding in the federal court, received and approved his report showing that action and what was done thereunder, and entered final judgment. No right of appeal or review was interfered with."); *In re Clinton*, 41 F.2d 749 (S.D.Cal.1930) (where debts incurred prior to date bankrupt became insane, a valid adjudication in bankruptcy may be made on petition by guardian appointed and authorized by state court to file bankruptcy petition; duties of bankrupt may be performed by guardian.); *In re Walrath*, 175 F. 243, 244–45 (N.D.N.Y.1910) (An infant

There is no legislative history to the 1978 Code indicating Congressional intent to es-

may be adjudicated a bankrupt if he "owes" debts. Infants with voidable liabilities "are not entitled to the benefits of the [bankruptcy] act, for the reason they do not 'owe' debts, not for the reason they are infants."); *In re Miller*, 133 F. 1017 (E.D.Penn.1904) (The Act of 1867 required a bankrupt to take a specified oath before he could be discharged, thus preventing discharge in bankruptcy for a person unable to do so due to death or insanity. The Act of 1898 has no such provision so insanity is not a bar to discharge, even though bankrupt did not appear at the first meeting of creditors and was not mentally capable of undergoing an examination by creditors. In *dicta*, better practice would require appointment of a guardian ad litem or involvement of a next friend); *In re Penzansky*, 8 Am.Bankr.Rep. 99, 100–101 (D.Mass.1902) (A voluntary petition is permitted. The test is whether debts are "based on contracts or obligations which . . . [debtor] can disaffirm upon coming of age or upon such [e.g., contracts for necessaries or liability under tort judgments] as render him absolutely liable."); *In re Brice*, 93 F. 942, 943–44 (S.D.Iowa 1899) (An infant liable for debts is eligible: "If . . . [infant] is a "person" within the meaning of the statute, this court has jurisdiction. . . . Apparently, . . . if the infant is liable for the debts he scheduled, he may . . . avail himself of the benefits of the bankrupt law, in the absence in such law of any provisions to the contrary." An infant who engaged in business as an adult and could not disaffirm debts under state law is eligible for voluntary bankruptcy.).

The following cases held or stated in *dicta* that infants or other incompetents could not be bankrupts under the Bankruptcy Act of 1898: *In re Eisenberg*, 117 F. 786, 787–88 (S.D.N.Y.1902) (A state court-appointed committee may not file a voluntary petition for a lunatic. Section 59a of the Bankruptcy Act provides any "qualified" person may file a petition. Under state law the committee lacked power to surrender title to a lunatic's property. The lunatic could not perform duties required under section 7 of the Act nor be subject to *ne exeat* or contempt proceedings. Congress "did not intend to include cases other than those mentioned in section 8 where provision is made for the continuance and settlement of estates of which the courts had acquired jurisdiction before the insanity occurred."); *In re Eidemiller*, 105 F. 595 (N.D.Ill.1900) (In an involuntary case, ". . . in Illinois an infant cannot be adjudged a bankrupt. In this case the infant can, upon reaching majority, repudiate the [claimed] debts."); *In re Duguid*, 100 F. 274, 276–77 (E.D.N.C.1900) (except possibly with respect to necessaries, minor not eligible for voluntary or involuntary bankruptcy, notwithstanding consent of guardian); *In re Dunnigan*, 95 F. 428 (D.Mass.1899) ("an infant cannot generally be made an involuntary bankrupt"). *See also Liberty Nat'l Bank v. Bear*, 276 U.S. 215, 222, 48 S.Ct. 252, 254, 72 L.Ed. 536 (1928) (In *dicta*, "in some cases the partnership was adjudged a bankrupt, although the court refused to adjudge the bankruptcy of the individual partners, either because they had not committed individual acts of bank-

tablish a new rule of exclusion of minors from bankruptcy relief. In fact, the eligibility provisions of the 1978 Code are generally broader than those under the former Bankruptcy Act. *Compare* Sections 2a(1), 130(1), and 323 of the former Bankruptcy Act, 11 U.S.C. §§ 11, 530(1), and 723 (repealed).

Involuntary petitions have been sustained against individuals suffering an incapacity.[5] There is no obvious statutory or historical imperative for a rule permitting involuntary petitions against some incompetent individuals but excluding other incompetent individuals (minors) from voluntary bankruptcy relief.

The Federal Rules of Bankruptcy Procedure do not directly address the eligibility of minors. Bankruptcy Rule 1016 authorizes the continuation of a bankruptcy case when a debtor becomes incompetent during administration of the case.[6] It is not clearly inferable that the Rules Drafters intended any opinion with respect to the eligibility of an incompetent to file bankruptcy in the first

---

ruptcy ... or because they were insane, or minors."); *In re Maidman*, 2 B.R. 569, 574 (S.D.N.Y.1980) (In *dicta*, in a Chapter XII proceeding involving a trustee under a land trust, "... where ... a contract may be disaffirmed by a petitioner on account of infancy ... voluntary resort to the Bankruptcy Court for relief (i.e. a discharge) is unnecessary, futile and properly denied.").

See also Annotation, *Voluntary or involuntary bankruptcy proceedings in case of incompetent or infant*, 125 A.L.R. 1292 (1940); Carl Zollmann, *Persons of Abnormal Status as Bankrupts*, 10 Col. L.Rev 221 (1910) (collecting English and American cases regarding married women, infants, and lunatics).

5. No Code case has been found directly addressing whether an involuntary petition may be maintained against an infant. The availability of involuntary relief against an incompetent adult is recognized in *dicta* in *In re Kjellsen*, 155 B.R. at 1018 and *In re Zawisza*, 73 B.R. at 933.

The eligibility of incompetents in pre-Code involuntary cases often turned on whether the bankrupt committed an "act of bankruptcy" while sane because several of the then applicable acts of bankruptcy had an element of intent. *See In re Evanishyn*, 107 F.2d 742, 743 (2d Cir.1939) (Involuntary proceedings may be brought against person previously adjudged insane by state court where an act of bankruptcy was committed while compos mentis. Section 4 of the former Bankruptcy Act "provides that 'any person,' except certain types of corporations, may become a voluntary bankrupt, and 'any natural person,' with specified exceptions, ... may be adjudged an involuntary bankrupt; ... duties required of a sane bankrupt ... may be performed by others."); *In re Tobin*, 24 F.Supp. 825, 826 (D.Minn. 1938) (involuntary petition against person adjudged insane prior to act of bankruptcy permitted where alleged act required no proof of intent); *In re Holmes*, 13 F.2d 653, 654 (D.Minn. 1926) (involuntary petition against incompetent permitted where act of bankruptcy was prior to adjudication of incompetence); *In re Kehler*, 153 F. 235, 236 (W.D.N.Y.1907) (an insane person cannot commit an act of bankruptcy; but invol-

untary petition valid if bankrupt was *compos mentis* at the time acts were committed), *rev'd on other grounds* 159 F. 55 (2d Cir.1908) (petitioning creditors have burden of overcoming presumption of insanity under the facts); *In re Burka*, 107 F. 674 (W.D.Tenn.1901) (where no guardian had been appointed by state court, bankruptcy court shall appoint guardian for lunatic against whom involuntary petition filed on allegation of acts of bankruptcy before lunacy began); *In re Weitzel*, 29 F.Cas. 604, 605 (W.D.Wis.1876) (party under guardianship as lunatic may be adjudged bankrupt against consent of bankrupt's guardian); *In re Pratt*, 19 F.Cas. 1248 (D.Mass.1872) (involuntary petition permitted; question whether discharge may be granted, where bankrupt unable to take oath prescribed by bankruptcy act and unable to submit himself to examination, not decided); *In re Murphy*, 17 F.Cas. 1030 (M.D.Tenn.1874) (adjudication based on default in involuntary bankruptcy set aside where bankrupt claimed he was *non compos mentis* at time debts incurred as well as on the involuntary petition date). *See also In re Derby*, *supra*, n. 4 (Act of 1867); *In re Dunnigan*, *supra*, n. 4; *In re Duguid*, *supra*, n. 4; *In re Eidemiller*, *supra*, n. 4.

6. Fed.R.Bankr.P. 1016 provides:

Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

The origin of Rule 1016 is section 8 of the Bankruptcy Act of 1898. Prior to enactment of that section, courts had held death or insanity abated a bankruptcy proceeding if the bankrupt had not yet taken the oath required for a dis-

instance.[7] Rule 1016 makes clear that incompetency is not an automatic bar to administration of a bankruptcy case.

The plain language of the Code is outcome determinative. This seven year old debtor is an "individual with regular income" eligible for Chapter 13.

## III CAPACITY

Capacity means the personal right of a party to come into court. *Johnson v. Helicopter & Airplane Services Corp.*, 404 F.Supp. 726, 729 (D.Md.1975). *See* 6A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 1559 at 441 (2d ed.1990); Black's Law Dictionary 207 (6th ed.1990) (capacity to sue is "[t]he legal ability of a particular individual or entity to sue in, or to be brought into, the courts of a forum"). Capacity is a procedural question typically controlled by court rules. *See Du Vaul v. Miller*, 13 F.R.D. 197, 198 (W.D.Mo.1952) (Rule 17's provisions regarding real party in interest are purely procedural). *Compare Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78, 83 (4th Cir.1973) (in a diversity case, "[w]hile the question of in whose name the action must be prosecuted is procedural, and thus governed by federal law, its resolution depends on the underlying substantive law of the state").

For civil actions in the United States district courts, Rule 17 of the Federal Rules of Civil Procedure fully circumscribes the capacity of parties.[8] Unfortunately, the historical development of the bankruptcy courts and the evolution of terms of art in the Bankruptcy Code and Rules conspire to complicate application of Rule 17 to determine capacity to file a bankruptcy petition.

Rule 81(a)(1) of the Federal Rules of Civil Procedure states that the civil rules "do not apply to proceedings[9] in bankruptcy ... except insofar as they may be made applicable thereto by rules promulgated by the Supreme Court of the United States." FED.

---

charge of debts under the Act of 1867. *See In re Miller*, 133 F. at 1018.

**7.** *See also* Comment 6, Comments and Instructions to Procedural Bankruptcy Form B 224B (Order Dismissing Chapter 13 Case), Bankruptcy Forms Manual, Vol. II, "Forms and Instructions for the Public," Administrative Office of the United States Courts (September, 1988) ("The notice [of a motion to dismiss] may be served in a variety of ways which are set forth in Bankruptcy Rule 7004 and Rule 4 of the Federal Rules of Civil Procedure [including a procedure for service on an infant]. When the debtor is an individual, other than an infant or incompetent person, perhaps the easiest method is for the notice to be mailed by first class mail.").

**8.** Rule 17 of the Federal Rules of Civil Procedure provides in part:

(b) Capacity to Sue or be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except

(1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right

existing under the Constitution or laws of the United States, and

(2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C. Sections 754 and 959(a).

(c) Infants or Incompetent Persons. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

FED.R.CIV.P. 17.

**9.** "Proceedings" here in Rule 81 of the Federal Rules of Civil Procedure should probably be defined more broadly than "proceedings" in Rule 7017 of the Federal Rules of Bankruptcy Procedure, discussed below. Civil Rule 81(a)(1) does not mention bankruptcy "cases." When Civil Rule 81 was promulgated, the Bankruptcy Act of 1898 was in effect and bankruptcy "cases" were called "proceedings." *Windsor Communications Group, Inc. v. Grant*, 75 B.R. 713, 728 (E.D.Pa. 1985). *See* note 11, *infra*.

R.Civ.P. 81(a)(1). The Supreme Court has acted to make some but not all of the Federal Rules of Civil Procedure applicable in bankruptcy.[10]

The piecemeal incorporation of the Civil Rules into the Bankruptcy Rules has collided with historical differences in practice between the bankruptcy and district courts. In the United States district courts, there is a single form of action known as a "civil action." Fed.R.Civ.P. 2. In the bankruptcy courts there are "cases" and "proceedings." A bankruptcy "case" is commenced by filing a petition under title 11. 11 U.S.C. § 301. "Proceedings" are discrete events which require judicial action in a bankruptcy court, including adversary proceedings and contested matters.[11]

Rule 17 of the Federal Rules of Civil Procedure has not been fully activated in bankruptcy *cases* and *proceedings*. Rule 7017 of the Federal Rules of Bankruptcy Procedure states: "Rule 17 Fed.R.Civ.P. applies in adversary proceedings...."[12] "Adversary proceeding" is a term of art defined in Rule 7001 of the Federal Rules of Bankruptcy Procedure. "Adversary proceeding" does not include a voluntary bankruptcy *case*.

If directed by the bankruptcy court, Rule 17 of the Federal Rules of Civil Procedure can be applied to contested matters, proceedings related to contested involuntary petitions, contested petitions commencing a case ancillary to a foreign proceeding, or proceedings to vacate an order for relief. *See* Fed. R.Bankr.P. 9014 and 1018. Also, Civil Rule 17 applies to depositions of minors or incompetents before an adversary proceeding is filed or pending an appeal. *See* Fed. R.Bankr.P. 7027.

Thus, the Supreme Court has empowered the bankruptcy court to use Rule 17 of the Civil Rules to evaluate the capacity of this debtor's mother to represent the debtor in the *contested matter* commenced when the Chapter 13 trustee objected to confirmation; yet, Rule 17 is not obviously applicable to determine whether the debtor's mother had capacity to file this Chapter 13 case in the first instance. This is an odd outcome.[13]

Though not expressly applicable, Rule 17 of the Civil Rules has been considered by some courts to determine capacity to file a

---

**10.** The Federal Rules of Bankruptcy Procedure have existed since 1973 when the Bankruptcy Rules replaced General Orders of the U.S. Supreme Court. The incorporation of some Civil Rules into the Bankruptcy Rules has been a continuous feature of bankruptcy practice since 1938. *See* General Order 37 (superseded), *reprinted in* 4B Collier on Bankruptcy at 1542 (14th ed. 1978).

**11.** "Case" and "proceeding" are not interchangeable terms. Under the former Bankruptcy Act, use of the terms was confusing. For example, filing a petition initiated a bankruptcy "proceeding." 11 U.S.C. § 1(24) (repealed). The former Bankruptcy Rules provided that a petition initiated a "case." Bankruptcy Rule 101 (1973). The drafters of the 1978 Bankruptcy Code:

more positively established the distinction between the term 'case' initiated by a Title 11 USC petition under Chapter 3 and the term 'proceeding.' A case is commenced by the filing of a petition ... The Title 11 case is not an action of the same character as the civil action case under the Federal Rules of Civil Procedure.... All disputes and controversies within a Title 11 case, all other matters which require judicial determination by the Bankruptcy Court, and all matters requiring administrative action during the pendency of the

Title 11 case are properly referred to as 'proceedings' within the Title 11 case.....
9 Norton Bankruptcy Law and Practice 2d, Introduction at xxiii-xxiv (1995). *See also* S.Rep. No. 989, 95th Cong., 2d Sess. 153–54 (1978) (emphasis added):

The term 'proceeding' is used instead of 'matters and proceedings,' the terminology currently used in the Bankruptcy Act and Rules. As used in this section *'everything that occurs* in a bankruptcy case is a proceeding.' Thus, proceeding here is used in its broadest sense and would encompass what are now called contested matters, adversary proceedings, and plenary actions under the current bankruptcy law. It also includes [any] disputes related to administrative matters in a bankruptcy case. Likewise, the term 'proceeding' includes issues which may arise after a case is closed....

**12.** With an exception not relevant.

**13.** Compounding the curiosity, if an *involuntary* petition had been filed against this debtor, the existing bankruptcy rules would direct this court to Civil Rule 17 to determine whether this minor was adequately represented to contest the petition; no bankruptcy rule applies Civil Rule 17 to determine capacity with respect to a *voluntary* petition.

bankruptcy petition.[14] There is a hook for this use of Civil Rule 17 in the Bankruptcy Rules.

Rule 9029(b) of the Federal Rules of Bankruptcy Procedure states: "Procedure When There is No Controlling Law. A judge may regulate practice in any manner consistent with federal law, these rules, Official Forms, and local rules of the district." The Advisory Committee Note to the 1995 version of FED. R.BANKR.P. 9029(b) states:

> This rule provides flexibility to the court in regulating practice when there is no controlling law. Specifically, it permits the court to regulate practice in any manner consistent with federal law, with rules adopted under 28 U.S.C. § 2075, with Official Forms, and with the district's local rules.

The "gap filling" function of Bankruptcy Rule 9029(b) is aligned with Rule 83 of the Federal Rules of Civil Procedure which

> 'closes all gaps in the rules. It ... permits judges to decide the unusual or minor procedural problems that arise in any system of jurisprudence in the light of the circumstances that surround them and of the justice of the case without the complications and injustice that must attend attempts to forecast the situations and to regulate them in advance either by general or by local rule.'

12 Wright & Miller, Federal Practice and Procedure § 3155 at 242 (1973), *quoting* statement of Edgar Tolman (Advisory Committee member), Proceedings, Washington Institute on the Federal Rules, 1938, p. 129. "Gap filling" by bankruptcy courts in matters of procedure is recognized in the legislative history of the Bankruptcy Reform Act of 1978:

> The elimination of most procedure from the ... [1978 Act] will give the Supreme Court optimal flexibility to treat with matters of procedure, or *if no rule is made, for the courts to fashion procedure on a case-by-case basis.*

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 293 (1977) (emphasis added).

■ Pursuant to FED.R.BANKR.P. 9029(b) it is appropriate to apply Rule 17 of the Civil Rules to determine capacity to file a Chapter 13 petition.

The capacity of Dorcas Renee Murray to file this Chapter 13 petition as "next friend" for her daughter is sustained by Rule 17(c) of the Federal Rules of Civil Procedure. This debtor is an infant. This debtor does not have a "duly appointed representative." Under the second sentence of Rule 17(c), "if an infant ... does not have a duly appointed representative [she] may sue by a next friend or by a guardian ad litem."

The second sentence of Rule 17(c) fixes a *federal* rule for capacity of a "next friend" for an (unrepresented) infant. As explained by the Fifth Circuit in *Travelers Indemnity Co. v. Bengtson*, 231 F.2d 263, 265 (5th Cir.1956), the second sentence of Rule 17(c)

> is unconditional, in no way dependent upon the capacity, under the law of the domicile for a party, or under the law of the state in which the district court is held for parties acting in a representative capacity as is expressed in FRCP 17(b), or a similar limitation implied under the first sentence of 17(c) where the action is brought by an appointed guardian, conservator, or similar fiduciary.[15]

---

**14.** See *Wieczorek v. Woldt (In re Kjellsen)*, 53 F.3d at 946; *In re Hall*, 188 B.R. at 483; *In re Zawisza*, 73 B.R. at 935–36.

**15.** Commentators and some cases have discussed a different reading of FED.R.CIV.P. 17(b) and (c). *See* 6A Wright, Miller & Kane, Federal Practice & Procedure § 1571 at 508. Wright & Miller states: "A close reading of the first two sentences of Rule 17(c) discloses that although no reference is made to state law, the language is sufficiently permissive to accommodate the application of state law in situations in which that is called for by Rule 17(b). Thus the mere fact that the representative of an infant or incompetent is permitted to sue or defend in federal court under the first sentence of Rule 17(c) does not necessarily preclude the court imposing the additional requirement that the representative have capacity in the forum state in accordance with Rule 17(b)." *Id.* at 509.

The Fifth Circuit's holding in *Bengtson* is true to the plain language of the second sentence of Rule 17(c). When an infant does not have a "duly appointed representative," a next friend may act for the infant in a federal court without reference to state law.

The debtor's mother was not required to comply with any particular appointment or qualification procedure before filing this "next friend" petition. *See Genesco, Inc. v. Cone Mills Corp.,* 604 F.2d 281, 285–86 (4th Cir.1979) (second sentence of Rule 17(c) permits infant lacking a general guardian to sue by next friend and "no special appointment process for the next friend is required."). *See also* 6A Wright, Miller & Kane, Federal Practice & Procedure § 1572 at 513 ("There are no special requirements for the person suing as next friend."). There is no evidence that this infant's best interests are not being protected by her mother. At any time, any party in interest may move under Rule 17(c) for appointment of a guardian ad litem or other protection.[16] Until then, the debtor's mother may act as the debtor's next friend.

An appropriate order will be entered.

---

**16.** *Compare Noe v. True,* 507 F.2d 9 (6th Cir. 1974) (error for district court to dismiss complaint without first acting on Rule 17 motion for appointment of guardian ad litem for plaintiff).