In re BURKA.

(District Court, W. D. Tennessee. March 19, 1901.)

1. BANKRUPTCY—INSOLVENT LUNATIC—GUARDIAN AD LITEM—APPOINTMENT—
PUBLICATION OF PROCESS.

In bankruptcy proceedings by involuntary petition against the estate of an absent lunatic, an application for the appointment of a guardian ad litem will not be delayed because of the omission to publish process, since Bankr. Act 1898, § 18a, requires publication only "in case personal service cannot be made," and the appointment would be necessary notwithstanding.

2. SAME—QUESTIONS DETERMINABLE ON APPLICATION FOR APPOINTMENT.

It would be premature to determine, before the appointment of a guardian ad litem in proceedings in bankruptcy against a lunatic, whether he could be adjudicated bankrupt for acts committed either before or after the lunacy began.

3. SAME.

The appointment of a guardian ad litem in the federal practice is regulated by equity rule 87, where full discretion is given the court for protection of the defendant under disability, and by general orders in bankruptcy No. 37 (32 C. C. A. xxxvi., 89 Fed. xiv.) this equity practice is prescribed for the bankruptcy courts. *Held*, that this authorized the appointment of a guardian ad litem to defend an involuntary petition of bankruptcy against a lunatic, when he had no regular guardian or committee, and that, when he has such guardian or committee, he must be brought in by process as well as the lunatic, and that the committee or guardian then be appointed guardian ad litem to defend in his behalf.

Involuntary Bankruptcy.

J. R. Deason and A. J. Harpole, for creditors.

HAMMOND, J. The petition alleges that the insolvent debtor is insane, but that before he became so he committed the acts of bankruptcy averred therein. It charges a fraudulent sale of his entire stock of goods for an inadequate consideration to one Fish, with intent to hinder and delay his creditors; also that he suffered a fraudulent preference by judicial process of attachment; and that in the attachment proceedings, a receiver having been appointed, the stock of goods is being administered for the benefit of the fraudulently preferred creditor and the fraudulent vendee, the receiver being a brother of the latter. Also that the insolvent debtor's other property has been picked up here and there by creditors proceeding against him since he became insane. It alleges, and the affidavits show, that the debtor resided at Union City, in this state, and carried on business there as a merchant for the greater portion of six months preceding the filing of the petition (Act 1898, § 2*l* [30 Stat. 545]); but that after the transactions aforesaid he went temporarily to the state of Alabama, to visit friends, or for other purposes, and that while there, becoming insane, he was, by proper proceedings, adjudged a lunatic, and confined in an asylum in that state. No committee or guardian was appointed for him there, and none has been appointed for him or for his property in this state, for which reason his property and business affairs have been and are neglected. Process on the petition having been returned that the defendant was not to be found in this district, upon affi-

davit that the foregoing facts were true the court here directed an order to be entered reciting those facts, the return of the process not found, and that no appearance had been had, although notice of the bankruptcy proceedings had also been served upon Fish, the receiver, and requiring the insolvent debtor to appear, plead, answer, demur, or otherwise defend the petition on or before a day named therein; that a copy of the order be served on the said defendant debtor wherever found, together with a copy of the petition; and also that the order be served on Fish, the receiver aforesaid. This order was executed by the marshal of the Northern district of Alabama by reading a copy of it to the defendant in the lunatic asylum at Tuscaloosa, Ala., and delivering to him a copy of the petition in bankruptcy, all in the presence of the superintendent or other official of the asylum. Bankr. Act 1898, § 18a (30 Stat. 551); Rev. St. § 738; Act March 3, 1875, c. 137, § 8 (18 Stat. 472); 1 Supp. Rev. St. p. 176; 1 Desty, Fed. Proc. p. 146, § 25 et seq. No publication has been had, but that was deemed unnecessary, since the process order was served personally on the defendant. Publication is required by the act of 1875 in equity proceedings only when the process order has not been personally served wherever the defendant may be found. Being a lunatic, possibly it would have been well if the court had also required publication to notify his friends; but the very language of the act of 1875 is that publication shall be made "where such personal service upon such absent defendant or defendants is not practicable." 1 Desty, Fed. Proc. § 8. Under the general discretion given to the court in the matter, and as the obvious purpose of the statute is to give the fullest notice possible, if the absent defendant be under disability, especially of lunacy, and his friends and property are found here, I think that a wise precaution would suggest a further direction by the court that publication be also made, in addition to that kind of personal service on a lunatic which is "practicable,"—to use the language of the act of 1875. But, since the bankruptcy statute also requires publication only "in case personal service cannot be made" (section 18a), notwithstanding the omission of the wiser precaution in this case, I have concluded not to delay this application for the appointment of a guardian ad litem because of it. It is not technically required, and the only result would be the appointment at last of a guardian ad litem, in any event.

It would be premature to determine whether one who is insane may be adjudicated bankrupt for acts committed either before or after the lunacy began. Hill. Bankr. 50, note; Avery & H. Bankr. 36; Coll. Bankr. (3d Ed.) 48; Bump, Bankr. (9th Ed.) 385; In re Funk, 4 Am. Bankr. R. 96, 101 Fed. 244; In re Pratt, 2 Low. 96, 19 Fed. Cas. 1248 (No. 11,371); In re Marvin, 1 Dill. 178, 16 Fed. Cas. 927 (No. 9,178), and note; In re Murphy, 10 N. B. R. 48, 17 Fed. Cas. 1030 (No. 9,946); In re Weitzel, 7 Biss. 289, 29 Fed. Cas. 604 (No. 17,365). So it is needless now to inquire whether there be any distinction between voluntary petitions by the guardian or committee of a lunatic and petitions in invitum by the creditors against the lunatic or his guardian or committee. These defenses

will all be open to the guardian ad litem when appointed, or to the regular committee or general guardian when brought in by process. On the application to appoint a guardian ad litem it is not essential to consider them. This petition avers that the acts of bankruptcy were committed while the debtor was of sound mind, and presumably he was in that condition when the petitioner's debts were contracted; and, on the face of it, for the purpose of appointing a guardian ad litem, these averments should be taken as true. But the guardian will look to the facts when he comes to make the defense. The same practice that obtains in equity should be had in bankruptcy in the matter of appointing a guardian ad litem or in making defense for lunatics. Suits in their behalf are instituted by their committees or guardians, and, if there be none, an information may be exhibited by the attorney general, or a bill by prochein ami, when proper order will be taken for the protection of their property. 1 Daniell, Ch. Prac. (1st Ed.) 8. They must be made parties defendant to such suits in their behalf, either by information or bill. Id. 113. And the committee or next friend bringing the suit should first obtain the sanction of the lord chancellor, which is perhaps also the rule in England as to voluntary petitions in bankruptcy by a lunatic; and possibly this might be held to be a proper proceeding in this country to obtain the benefit of the voluntary features of our bankruptcy statute. In re Cahen, 10 Ch. Div. 183; In re Lee, 23 Ch. Div. 216; In re Farnham [1896] 1 Ch. 836; In re James, 12 Q. B. Div. 332; In re Roberts, Mont. & C. 653. That is to say, a regular guardian or committee might, with the sanction of the court appointing him, file a voluntary petition in behalf of an insolvent lunatic possibly. Where a proposed defendant is of weak intellect, a preliminary petition may be filed to appoint a guardian ad litem to defend for him. 1 Daniell, Ch. Prac. (1st Ed.) 248. But an idiot or lunatic may, and, indeed, must, in equity as at law, be made a defendant to a suit against him. He must defend by his committee, who is also a necessary party to the suit, and the committee should apply to be appointed the guardian ad litem for making the defense. If the lunatic have no committee, or if the committee (or regular guardian, which is the same thing in modern practice) be antagonistic in interest, a guardian ad litem will be appointed on the application either of the plaintiff or the defendant. Id. 219, 600; 2 Daniell, Ch. Prac. 287, 302, 403; 16 Enc. Pl. & Prac. 601, 602, notes. This edition of Daniell's Chancery Practice is cited because it is the guide for the federal courts in the matters of equity practice. Equity rule 90; Thomson v. Wooster, 114 U. S. 104, 112, 5 Sup. Ct. 788, 29 L. Ed. 105, Mr. Justice Bradley's note; U. S. v. Anon. (C. C.) 21 Fed. 761, 766, and note. The appointment of guardians ad litem in federal practice is regulated by equity rule 87, where full discretion is given to the court for the protection of the defendant under disability. By general orders in bankruptcy No. 37 (32 C. C. A. xxxvi., 89 Fed. xiv.) this equity practice is prescribed for the bankruptcy courts, and altogether these furnish authority to appoint a guardian ad litem to defend an involuntary petition in bankruptcy against a lunatic,

when he has no regular guardian or committee appointed for him, or for his estate by competent authority of the state having control of his affairs. If he have such committee or guardian, he must be brought in by process as well as the lunatic, and that committee or guardian will then be appointed guardian ad litem to defend the petition in behalf of the lunatic.

There being no such committee or regular guardian in this case, Mr. A. W. Biggs, an attorney of this court, residing at Trenton, will be appointed guardian ad litem. A copy of the order making this appointment and a copy of the petition will be served on him, and he will be required to plead, answer, demur, or otherwise defend within 10 days from this date. His compensation will be provided for out of the lunatic's estate, if he be adjudged bankrupt, or the petitioning creditors will be required to pay it as costs if they fail in their petition. And the guardian ad litem has leave to apply for proper orders to pay expenses and costs as he may be advised. Ordered accordingly.