**In re Oriole A. KJELLSEN,**
**Social Security Number:**
**503–82–4227, Debtor.**

**Bankruptcy No. 93–40097.**

United States Bankruptcy Court,
D. South Dakota, S.D.

June 23, 1993.

Scott M. Perrenoud, Fisher Swanson Hughes, Sioux Falls, SD, for movant Terry D. Wieczorek.

John B. Wehde, Huron, SD, for respondents, debtor Oriole A. Kjellsen and Shirley Woldt.

### MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

The matter before the Court is an 11 U.S.C. § 1307(c) motion to dismiss this bankruptcy case for "cause," filed by Sioux Falls Attorney Scott M. Perrenoud on behalf of Terry D. Wieczorek, Guardian of the Estate of Oriole Kjellsen [hereinafter "Movant"], and resisted by Huron, South Dakota, Attorney John B. Wehde on behalf of Debtor and Debtor's daughter, Shirley Woldt [hereinafter "Respondents"], acting as Debtor's Attorney–in–Fact via a Durable Power of Attorney. Primarily, the issue is whether or not a state-court-appointed guardian of an estate is the only proper person to file a voluntary bankruptcy petition on behalf of a debtor declared incompetent during state court guardianship proceedings. After an evidentiary hearing, the Court took the matter under advisement.[1] This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

### FACTS AND PROCEDURAL BACKGROUND

In October, 1986, Debtor, now an 88–year–old nursing home resident, executed a Durable Power of Attorney in favor of her son[2] and her daughter, Shirley Woldt. In July, 1990, Debtor's grandson, through counsel, filed a state court petition seeking appointment of a guardian over Debtor's estate.[3] Following numerous contested hearings spanning roughly two years, the state court completed the guardianship proceedings and rendered several significant determinations as part of its Findings of Fact and Conclusions of Law. The court concluded Debtor suffers from dementia which has rendered her mentally incompetent and incapable of managing her estate. While contemplating several different candidates to serve as Guardian of the Estate, Shirley Woldt was disqualified when the court discovered she had overreached while acting under the Durable Power of Attorney, evidenced by "several loans and transfers of funds" made from Debtor to Shirley

1. Confirmation of Debtor's Chapter 13 plan was also scheduled for hearing, but was continued on ten days' notice pending resolution of the motion to dismiss.

2. Debtor's son passed away in 1991.

3. Civ. No. 90–9009 was filed in the Third Judicial Circuit Court, Brookings County, South Dakota, the Hon. Dale E. Bradshaw, presiding. "Appointment of a guardian of the person and estate, or either, may be made on the petition of a relative or other person on behalf of the person for whom the guardianship is sought...." S.D.C.L. § 30–27–11.

Woldt and other members of her family. Based on this finding, the state court concluded that any authority or control Shirley Woldt held over Debtor's estate should terminate. Movant was appointed Guardian of the Estate [4] and immediately corresponded with Shirley Woldt to revoke "any Power of Attorney executed by Oriole Kjellsen that may grant control of her estate to any other party." [5] On May 27, 1992, Shirley Woldt appealed the state court's final order and judgment in an effort to set aside the guardianship appointment.[6] The appeal, currently pending in the South Dakota Supreme Court, was stayed February 19, 1993, with the filing of this Chapter 13 bankruptcy proceeding, a voluntary petition for relief signed by Debtor and signed by "Shirley Woldt as Durable Power of Attorney for Oriole A. Kjellsen."

## COMPETING ARGUMENTS

The motion to dismiss attacks the bankruptcy filing on a multi-pronged basis, all of which allege cause as contemplated by 11 U.S.C. § 1307(c). The first argument states that where an individual is under a state court guardianship of the estate, the guardian is the only proper person to file a voluntary bankruptcy petition on the individual's behalf. *In re Clinton,* 41 F.2d 749 (S.D.Cal.1930); *In re Smith,* 115 B.R. 84 (Bankr.E.D.Va.1990); *In re Zawisza,* 73 B.R. 929 (Bankr.E.D.Pa.1987); *In re Kirschner,* 46 B.R. 583 (Bankr.E.D.N.Y.1985). Movant contends Shirley Woldt improperly filed this petition due to a lack of authority or control over Debtor's property or finances inasmuch as she was not appointed guardian of Debtor's estate. In fact, any control Shirley Woldt may have had over

the estate was revoked after the state court found she had abused the estate "for her own purposes." Moreover, Movant contends that a power of attorney is not adequate authority for filing a bankruptcy petition, particularly in instances where a Guardian of the Estate exists at the time of filing. The second argument is that the case is subject to *mandatory* dismissal based on the plain language of 11 U.S.C. § 1307(b) which states, "On request of the *debtor* at any time ... the court *shall* dismiss a case under this chapter," and in this case, Debtor, through her Guardian of the Estate, requested the case be dismissed (emphasis supplied). Third, Movant states 11 U.S.C. § 109(e) disqualifies Debtor's eligibility as a Chapter 13 debtor since only an individual with "unsecured debts of less than $100,000 ... may be a debtor under chapter 13," and as indicated on Schedule F, Debtor lists $125,568.68 as total unsecured, non-priority debt, including $31,269 in dispute. Movant states that the majority view on this issue aggregates all disputed and undisputed unsecured claims to arrive at the total amount of unsecured debt for purposes of determining eligibility under 11 U.S.C. § 109(e). *Matter of Pearson,* 773 F.2d 751 (6th Cir.1985); *In re Sylvester,* 19 B.R. 671, 673 (Bankr.9th Cir.1982); *Gould v. Gregg, Hart, Farris & Rutledge,* 137 B.R. 761 (W.D.Ark.1992); *In re Gordon,* 127 B.R. 574 (E.D.Pa.1991); *In re Jerome,* 112 B.R. 563 (S.D.N.Y.1990); *In re Lamar,* 111 B.R. 327 (D.Nev.1990); *In re Dally,* 110 B.R. 630 (D.Conn.1990); *In re McGovern,* 122 B.R. 712 (Bankr.N.D.Ind. 1989). Debtor's total unsecured debt exceeds the mandatory $100,000 amount, therefore, the case must be dismissed.

**4.** Pursuant to S.D.C.L. §§ 30–27–35 and 30–27–36, Letters of Guardianship, dated May 7, 1992, were issued to Movant as Guardian of the Estate of Oriole Kjellsen and were filed and recorded with the Clerk of Court May 8, 1992. Movant's Exhibit "A" (Letters of Guardianship Civ. No. 90–9009).

**5.** (Letter from Movant to Shirley Woldt of 5/12/92.) S.D.C.L. § 59–7–2.4 states that if a guardian of an estate is appointed, any attorney-in-fact must account to the guardian, rather than to the principal, and that the guardian has

the same power as the principal would have, but for the incompetency, "to revoke, suspend or terminate all or any part of a power of attorney or agency."

**6.** The appeal challenges personal and subject matter jurisdiction and raises the issue of whether the trial court abused its discretion in making a determination of mental incompetence and in appointing a guardian of the estate. Respondents' Exhibit "A2" (Appellee's Brief, "Statement of the Case" at 3).

Fourth, Debtor is not insolvent,[7] therefore, bankruptcy is not in the best interest of Debtor or Debtor's creditors. As an alternative, Movant suggests Debtor follow the state court's recommendation and sell the real property asset known as the "Bozied Amoco Station" and use the sale proceeds to pay her creditors.[8] Fifth, Movant argues the bankruptcy petition was filed in bad faith by Shirley Woldt, "interposed for improper motives" following her state court failure to defeat the guardianship proceedings either by completely avoiding the appointment of a guardian or by having herself named as Guardian of the Estate. Finally, Movant raises the doctrine of collateral estoppel to argue that Debtor, through her attorney or otherwise, is precluded from "relitigating or contesting any of the facts required to support the motion to dismiss."

To defeat the argument that the Guardian of the Estate is the only individual who may properly file this petition, Respondents note their pending appeal, emphasizing the fact there has been no final adjudication as to the legitimacy of Movant's appointment as guardian of Debtor's estate. Without this final adjudication, Respondents believe any attempt Movant made to revoke Shirley Woldt's Durable Power of Attorney is meaningless. And due to a lack of proper notice to Debtor, Respondents further believe the entire guardianship proceedings are totally "void ab initio for want of jurisdiction" and that there was insufficient evidence for the state court to declare Debtor mentally incompetent as justification to appoint a Guardian over the Estate. The reply also argues case law "satisfactorily establishes the right of a Durable Power of Attorney to file a petition in bankruptcy even without the expressed execution of the petition by the principal/debtor."

In reply to the argument that 11 U.S.C. § 1307(b) subjects this motion to mandatory dismissal, Respondents elucidate that the state court appointment was for an estate guardian only, and an estate guardianship does not in and of itself establish the right to obtain a mandatory dismissal of a case, particularly over objection of the Debtor and Debtor's Durable Power of Attorney.

As to the Chapter 13 qualification argument, Respondents contend disputed debts are deemed contingent and/or unliquidated for purposes of calculating the requirements set forth in 11 U.S.C. § 109(e). Debtor is eligible for Chapter 13 reorganization since liability for $31,269 worth of unsecured debt is in dispute and "subject to a determination of issue of jurisdiction over the Debtor and her estate." Moreover, if, on appeal, the South Dakota Supreme Court concludes the state court lacked jurisdiction to decide the guardianship proceedings, this amount, along with this issue, will be eliminated, since it represents fees and costs associated with the guardianship proceedings. Regardless, Respondents give little credence to the 11 U.S.C. § 109(e) eligibility argument since Debtor has the option of converting this case to Chapter 11.[9]

Although Movant asserts "solvency" means reorganization is not in the best interest of Debtor or her creditors, Respondents cite Movant's own activities to suggest Debtor is insolvent. First, Respondents claim Movant has failed to pay Debtor's current debts as they have come due, which is not indicative of a truly solvent debtor; second, for purposes of obtaining authority to sell Debtor's real property asset, "Bozied Amoco Station," Movant represented to the state court on two separate occasions that Debtor *was* insolvent and had insufficient liquid assets and income to

---

7. Attached to the Chapter 13 petition is a Summary of Schedules listing Debtor's total assets as $1,027,322.80 and total liabilities as $125,568.68.

8. The trial court authorized a public auction sale of Debtor's real property asset known as the "Bozied Amoco Station," located in Brookings, South Dakota. The property sold for $115,000, but there has been no state court confirmation of the sale. Respondents' Exhibit "F" (Guard-

ian's Report and Return of Sale of Real Property at Public Auction). This matter is also on appeal.

9. After notice and hearing, the court may convert a Chapter 13 case to Chapter 11, provided that the debtor requests the conversion. 11 U.S.C. § 1307(d), (e).

apply against present and future debts. Respondents contend Debtor needs financial rehabilitation and protection and that this filing is an accommodation to Debtor's creditors and a prevention of further waste of estate assets.

The reply also states there is no conflict of interest created by the fact that counsel represents both Debtor and Shirley Woldt as Durable Power of Attorney inasmuch as both parties knew of the arrangement and even agreed that the state court would appoint Shirley Woldt as Guardian Ad Litem for the purpose of representing Debtor in a civil action against numerous defendants based on the understanding that counsel would represent Shirley Woldt in this role as well. Movant's "bad faith" and "conflict of interest" accusations are characterized as "spurious and interjected by the Movant for inflammatory and diversionary purposes."

For all these reasons, Respondents request the motion be denied.

## APPLICABLE AUTHORITY

*Filing Voluntary Petitions on Behalf of Incompetent Debtors*

■ The Bankruptcy Code contains no rule or provision that requires a debtor to be mentally competent in order to seek relief in bankruptcy. *See* 11 U.S.C. § 109(e); *In re Zawisza*, 73 B.R. at 932. A mentally incompetent debtor's "inability to assume the duties, burdens, and obligations arising from the filing of bankruptcy does not preclude him from seeking relief under Chapter 13." *In re Jones*, 97 B.R. 901, 902

(Bankr.S.D.Ohio 1989). In fact, the subject of mental competency, and/or the lack of it, is only found in Bankruptcy Rule 1016, which states that a pending case may continue despite the *onset* of a debtor's incompetency.[10] Fed.R.Bankr.P. 1016. Very clearly, Congress made no attempt to bar an incompetent person from filing a voluntary bankruptcy petition, perhaps due to an understanding that serious constitutional issues such as due process and equal protection would arise given the fact the Bankruptcy Code allows involuntary petitions to be filed against incompetent individuals.[11] *In re Zawisza*, 73 B.R. at 934, *citing Pyler v. Doe*, 458 U.S. 1131, 103 S.Ct. 14, 73 L.Ed.2d 1401 (1982); *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

Prevailing authority on the subject of who may file a voluntary bankruptcy petition for an incompetent debtor indicates court-appointed guardians may do so, so long as the court specifically authorizes the act. *In re Smith*,[12] 115 B.R. at 85; *In re Kirschner*, 46 B.R. at 584 n. 1, *citing In re Clinton*, 41 F.2d at 750. Other courts have not required such explicit court authorization. *In re Gerst*, 106 B.R. 429, 430 (Bankr.E.D.Pa.1989); *In re Jones*, 97 B.R. at 903; *In re Zawisza*, 73 B.R. at 932. In *In re Zawisza*, no petition for guardianship had been filed, and so an attorney, as debtor's "next friend,"[13] filed the bankruptcy petition on debtor's behalf, but despite this

10. Bankruptcy Rule 1016 states that in a Chapter 13 reorganization, the case may be dismissed, but, "if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the ... incompetency had not occurred." Fed. R.Bankr.P. 1016.

11. Involuntary petitions are limited insofar as the particular chapter under which they may be filed. Since a reorganization under Chapter 13 only works when there is a willing debtor who wants to repay creditors, no involuntary petition may be filed under this chapter. 11 U.S.C. § 303.

12. An incompetent debtor's wife, acting under a power of attorney, was denied permission to file the petition on behalf of her husband because a local bankruptcy rule required all petitions to include "an unsworn declaration with the signature of all debtors" and debtor was physically unable to sign his name. *In re Smith*, 115 B.R. 84, 84–85 (Bankr.E.D.Va.1990). The court stated a guardian having specific authority to file the bankruptcy would need to be appointed. *Id.*

13. In its analysis, the court determined that "next friend" could be broadly defined as "anyone with an interest in a debtor's welfare." *In re Zawisza*, 73 B.R. at 936, *citing Child v. Beame*, 412 F.Supp. 593, 599 (S.D.N.Y.1976).

factual difference, the issue raised is the same as in the case *sub judice* wherein a creditor moved to dismiss the case under 11 U.S.C. § 1307(c) for cause, arguing that a mentally incompetent person is incapable of filing a voluntary petition and that, alternatively, the only proper person to file such a petition is a court-appointed guardian. *In re Zawisza*, 73 B.R. at 930–31. The court relied on Fed.R.Civ.P. 17(c),[14] which allows court filings generally to be made by an incompetent's friend, and reasoned that a next friend would also be a proper party to file a voluntary petition, since, under this rule, the next friend could file every other type of federal action. *Id.* at 935. The court explained: "[T]he underlying purpose of FRCP 17(c) is to permit someone, ... to act expeditiously, particularly where a guardian has not been appointed, in order to protect the interest of the incompetent." *Id. Zawisza* clearly states that a court-appointed guardian may make a proper bankruptcy filing on behalf of an incompetent debtor, and it also holds that such an individual is *not* the only individual who may make a proper filing: "[W]e see no reason for not allowing the filing of a bankruptcy on behalf of the incompetent by someone who is competent, such as a guardian or next of friend." *Id.* at 933. The question, then, is whether the *Zawisza* rationale logically extends to cases where a guardianship exists, so that other competent individuals, fitting the broad definition of "next friend," i.e., acting in the interest and welfare of an incompetent debtor, may also properly file a bankruptcy petition.

## Recognizing the Limited Protection of a Special Guardian

In this state, circuit courts are empowered to appoint guardians over residents "of unsound mind." S.D.C.L. § 30–27–5. A general guardian is a person lawfully invested with the power, and charged with the duty, of taking care of "the person" and managing "the property" of another person who is considered incapable of administering his own affairs. *Black's Law Dictionary* 635 (5th ed. 1979). In contrast, a special guardian is one with limited powers and duties: responsibility for either the estate but not of the person or visa versa. *Id.* South Dakota recognizes that an individual's need for protection may vary and recognizes that the role of a personal caretaker differs fundamentally from that of a property manager, therefore, if necessary or convenient, a special guardian may be appointed over an individual's person or over an individual's estate, or a general guardian may be appointed over both.[15] S.D.C.L. § 30–27–6. Providing limited protection via a special guardianship recognizes the favorable use of less restrictive alternatives. Despite the designation of general and special guardianships, existing statutory language may be ambiguous in distinguishing between the two. Fortunately, reparations have been made.

Effective July 1, 1993, the South Dakota Guardianship and Conservatorship Act [hereinafter "Act"] will replace a substantial majority of existing provisions on guardianships.[16] The Act will clarify the distinction between guardianships by using the term "guardian" for an appointee responsible for making personal care deci-

---

**14.** In pertinent part, Fed.R.Civ.P. 17(c) states: "An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem." This rule is incorporated into bankruptcy law for adversary proceedings by Bankruptcy Rule 7017.

**15.** Unless the court orders otherwise, a general guardian will be appointed with responsibility for both the person and the property of the ward. S.D.C.L. § 30–28–1.

**16.** The Act, a product of more than three years' work, is the result of the Guardianship Committee, a subcommittee of the State Bar Associa-

tion's Real Property, Probate and Trust Law Section, which introduced a draft bill to the 1993 legislative session that passed with little controversy and was signed by the Governor March 15, 1993. The Act, codified at S.D.C.L. ch. 30–36, will repeal S.D.C.L. chs. 30–26 to 30–32, which relate to the appointment and administration of guardianships for both minors and adults, and will be replaced with more detailed provisions on the appointment of guardians and conservators for adults at S.D.C.L. §§ 30–36–44 to 30–36–63. David English, "The South Dakota Guardianship and Conservatorship Act," Part 1: Overview and Philosophy at I–1.

sions and by using the term "conservator" for an appointee responsible for managing property. S.D.C.L. § 30–36–2; David English, "The South Dakota Guardianship and Conservatorship Act," Part 1: Overview and Philosophy at I–2. The Act will also make a conceptual change by focusing on an individual's need for protection, rather than on the nature of the individual's infirmity, by avoiding potentially pejorative terms as "incompetent," "person of unsound mind," or "incapacitated person." *Id.* at I–3. And the Act will continue to encourage the use of less restrictive alternatives, including temporary guardians or conservators and durable powers of attorney.[17] S.D.C.L. § 30–36–43. Guardianships in place on the effective date of the Act will remain in full force and effect unless otherwise modified or terminated, however, the Act applies to all existing guardianships. S.D.C.L. § 30–36–3.

*Dismissing Chapter 13 Petitions "For Cause"*

■ A petition for relief must be filed in good faith. *In re Utne,* 146 B.R. 242, 248 (Bankr.D.S.D.1992) (Hoyt, J.). Lack of good faith is sufficient grounds, or "cause," as contemplated by Section 1307(c), which permits such action if in the best interests of the creditors and the estate, or, if there is "cause." [18] *In re Hundley,* 99 B.R. 306, 309 (Bankr.E.D.Va.1989); *In re Love,* 957 F.2d 1350, 1354 (7th Cir. 1992). But because the term must apply to a multitude of diverse fact situations, the term "good faith" is not susceptible to strict definition, and Congress neither defined nor explained the term either in the Bankruptcy Code or in the legislative history. *In re Hundley,* 99 B.R. at 309. Not surprising, then, that this circuit has not been able to formulate an overall, comprehensive definition for use in the Chapter 13 context. *Education Assistance Corp. v. Zellner,* 827 F.2d 1222,.1227 (8th Cir.1987), *citing In re Terry,* 630 F.2d 634 (8th Cir. 1980).

■ In general, however, a good faith inquiry is directed to whether the petition and/or plan conforms to the provisions, purpose, or spirit of Chapter 13. *In re Gier,* 986 F.2d 1326, 1329 (10th Cir.1993), *citing In re Estus,* 695 F.2d 311, 316 (8th

---

**17.** The Act places particular emphasis on the use of the durable power of attorney as an alternative to guardianship and conservatorship. A guardian or conservator should not be· appointed for an individual who has executed a durable power of attorney unless the agent's powers are inadequate or it is shown that the agent is not acting in the principal's best interests. Such a protective standard is not found in existing law, however.... Moreover, under SDCL § 59–7–2.4, as currently in effect, a guardian, upon appointment, succeeds to the principal's right to revoke the power.

The new Act reverses existing law. First, a guardian or conservator may not revoke a durable power of attorney without express authorization of court. SDCL § 30–36–18 ... § 59–7–2.4.... Second, a petitioner who knows of the existence of a durable power of attorney must so state in the petition for appointment and attach a copy of the power, if available. SDCL § 30–36–33. The two requirements ensure that an individual's power will remain in effect until a court, and not the guardian or conservator, determines whether it is appropriate to revoke the power.

*Id.* at I–4.

**18.** Section 1307(c) includes the following nonexhaustive list as constituting "cause" for dismissal:

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28;

(3) failure to file a plan timely under section 1321 of this title;

(4) failure to commence making timely payments under section 1326 of this title;

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521; or

(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521.

Cir.1982); *Education Assistance Corp. v. Zellner*, 827 F.2d at 1227. A good faith inquiry, whether for a petition or a plan, is a factual determination based on a "totality of the circumstances." *In re Gier*, 986 F.2d at 1329; *In re Love*, 957 F.2d at 1357; *In re Utne*, 146 B.R. at 248, *citing In re Schuldies*, 122 B.R. 100, 101 (D.S.D.1990). Both the Seventh and Tenth Circuits have considered the following non-exhaustive list of factors relevant to a "good faith" inquiry concerning the filing of a Chapter 13 petition:

> [T]he nature of the debt, including the question of whether the debt would be non-dischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*In re Gier*, 986 F.2d at 1329, *citing In re Love*, 957 F.2d at 1357. Other courts have considered different factors, including whether there is an absence of any unsecured creditors; whether the debtor has the ability to pay a meaningful part of his debts under a plan of reorganization; and whether the petition is filed as a litigation tactic inconsistent with an honest intent to readjust financial affairs. *In re Hundley*, 99 B.R. at 309; *In re Keniston*, 60 B.R. 742, 744 (Bankr.D.N.H.1986); *In re Bell*, 56 B.R. 637 (Bankr.E.D.Mich.1986). If a multiplicity of factors exists which would be sufficient to meet the "cause" requirement of Section 1307(c), "the cumulative effect will be considered" in determining whether sufficient cause exists for dismissing the bankruptcy petition. *In re Petro*, 18 B.R. 566, 570 (Bankr.E.D.Pa.1982); *In re McClure*, 69 B.R. 282, 285 (Bankr. N.D.Ind.1987).

## ANALYSIS

Clearly, Debtor is entitled to seek bankruptcy protection and financial rehabilitation despite any existing mental condition at the time of filing. The question is whether Debtor's Durable Power of Attorney properly filed the petition when a special Guardian of the Estate had been appointed prior to filing. Naturally, prevailing authority states the guardian may make the filing, but it has also been held that someone fitting the broad definition of a "next friend" can file a petition, since the underlying purpose of the rules of practice is to allow someone to act expeditiously in order to protect the interest of an incompetent individual, particularly where no guardian exists. Here, a guardian does exist, but it is a limited or special guardian. In addition, Debtor is represented by a Durable Power of Attorney authorized to act "expeditiously in order to protect Debtor's interests" as they concern various creditor relationships. Therefore, the existence of Debtor's specific Guardian of the Estate did not preclude the proper filing of this petition by Debtor's Durable Power of Attorney.

After being petitioned to appoint a special guardian to manage Debtor's property and after determining Debtor was incapable of managing her own property, the state court appointed Movant as Guardian of the Estate. At this point, Debtor was protected by two fiduciary representatives: a Guardian of the Estate and a Durable Power of Attorney.[19] Immediately thereafter, steps were taken to revoke that portion of the Durable Power of Attorney that allowed Shirley Woldt to control Debtor's property. The revocation did not, however, affect Shirley Woldt's ability to continue acting as Debtor's personal caretaker and to make personal decisions on Debtor's behalf. "Bankruptcy is a personal action which the individual should make."[20] *In*

---

**19.** By definition, the Durable Power of Attorney executed in favor of Shirley Woldt endured Debtor's mental incompetency. If a principal designates another as attorney-in-fact or as agent via a written power of attorney, "the authority of the attorney in fact or agent is exercisable by him as provided in the power on behalf of the principal notwithstanding any later disability or incapacity of the principal...." S.D.C.L. § 59-7-2.1.

**20.** Under the Act, a conservator, in managing an estate, may exercise any one of 21 enumerated powers without prior court authorization, in-

*re Smith*, 115 B.R. at 85, *citing In re Raymond*, 12 B.R. 906, 908 (Bankr.E.D.Va. 1981). Bankruptcy Rule 9010 allows an attorney-in-fact to act on behalf of a debtor. *See also In re Gridley*, 131 B.R. 447, 449 (Bankr.D.S.D.1991). Shirley Woldt, acting pursuant to an unrevoked part of an enduring power of attorney, was entitled to decide upon and to file a voluntary bankruptcy petition on Debtor's behalf. Without deciding the question of whether an incompetent debtor is capable of filing a voluntary petition, the Court notes that "incapacity" is not an all-or-nothing concept, and in this case, Debtor signed this petition, perhaps some evidence of her own participation and influence on the decision to file. A proper filing commences a voluntary case and constitutes an order for relief. *Id.;* 11 U.S.C. § 301. In turn, a bankruptcy estate is created, consisting of "all legal and equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

■ The bankruptcy estate is the statutory successor to the debtor so that the debtor no longer has an interest in the property. As Debtor's representative, then, Movant, as Guardian of the Estate, no longer has an interest in the property. The personal decision to file this petition, while not an act of control over Debtor's property, did have the legal effect of "pulling" Debtor's property into the bankruptcy arena, and Congress requires custodians of bankruptcy assets to bring them to the trustee, for it is the trustee who becomes the estate's representative and assumes possession and exercises control over all known assets of the estate, where appropriate. 11 U.S.C. § 362(b)(1). The Bankruptcy Code also provides that any entity, other than a custodian, that has possession, custody, or control, during the case, of property that may be used, sold, or leased by the trustee, or, that the Debtor may declare exempt, shall deliver it to the trustee and provide an accounting of the property, unless it is of inconsequential value or benefit

to the estate. 11 U.S.C. § 542. In sum, Movant, as Debtor's Guardian of the Estate and court-appointed conservator, must deliver to the trustee and account for property that has come into his possession, custody, or control as a custodian. 11 U.S.C. § 543.

■ Having determined that Shirley Woldt, as one of Debtor's two fiduciary representatives, properly filed this petition, and noting for purposes of this motion that the two representatives are diametrically opposed, the Court is not able to grant a mandatory dismissal of the case as suggested pursuant to Section 1307(b). Rather, the Court must look at the totality of circumstances to decide if "cause" exists to dismiss the case pursuant to Section 1307(c).

■ Questioning Debtor's motives, Movant believes the petition was filed in bad faith. A good faith inquiry is a factual one based on the totality of circumstances. The mere allegation that Shirley Woldt filed this proceeding following a defeat in the state court guardianship proceedings is, by itself, inconclusive to a finding of "bad faith." Likewise, the fact that the petition was filed some nine months after the state court guardian was appointed is insufficient to deem it an improper tactical scheme constituting "bad faith." As presented on this record, there are no facts to indicate that Debtor made any fraudulent representations to mislead the Bankruptcy Court, that Debtor unfairly manipulated the Bankruptcy Code, or that Debtor incorrectly stated her debts and expenses. Neither is there any indication that creditors have been improperly treated as a result of the filing nor that there is a lack of Debtor's ability to repay a meaningful part of her debts. In contrast, Debtor has stated a need and intent to reorganize her financial affairs, in part, to accommodate her creditors and to avoid any further waste of estate assets. The cumulative facts on this

cluding the power to invest and reinvest estate funds; continue or participate in the operation of any unincorporated business; enter into or renew a lease; pay taxes; and insure the assets

of the estate. Filing a voluntary bankruptcy petition is not one of the enumerated powers granted to a conservator. S.D.C.L. § 30–36–54.

record simply cannot support a conclusion of bad faith filing.

▆▆▆ Movant indicates Debtor is solvent and in good financial health, since the value of assets exceeds liabilities. When Congress enacted the 1978 Bankruptcy Code, the requirement of insolvency as a pre-condition to filing a petition under any chapter of Title 11 was removed. *In re Keniston,* 60 B.R. at 745; *In re Keniston,* 85 B.R. 202, 214 (Bankr.D.N.H.1988). Solvent debtors can file petitions so long as they are willing to subject their assets to administration under the bankruptcy laws. *In re Keniston,* 60 B.R. at 745. It is quite possible that Debtor, while solvent on paper, may be heading toward insolvency, and a debtor headed for financial trouble would do well to file sooner rather than later. *In re Wynco Distributors, Inc.,* 126 B.R. 131, 134 (Bankr.D.Mass.1991). Any ability of a debtor to repay debts in whole or in part is not adequate cause for dismissal under Section 707(b), and neither should it constitute "cause" under Section 1307(c). *In re Keniston,* 85 B.R. at 214; *In re Mastroeni,* 56 B.R. 456, 459–60 (Bankr.S.D.N.Y.1985). Until a plan is formulated and proposed plan treatment is analyzed, it is too speculative to conclude that reorganization is not in the best interests of Debtor and Debtor's creditors simply because Debtor is solvent.

▆▆▆ The Court recognizes there is a discrepancy over Debtor's eligibility to reorganize under Chapter 13 and that the majority view aggregates all unsecured debt for purposes of determining that part of the eligibility requirement under Section 109(e) concerning unsecured debt. However, denial of eligibility should not be lightly or routinely imposed on a debtor, and, in this instance, the Court finds a somewhat unique aspect regarding the current posture of this case as it relates to Respondents' pending appeal. The automatic stay has "suspended" Debtor's pending appeal of the state court guardianship proceed-

ings. A resolution of those proceedings, no matter the outcome, will allow the eligibility aspect of this case to be resolved. As so while the Court does not find sufficient cause under Section 1307(c) to dismiss the bankruptcy case, the case should not proceed until the eligibility question is dealt with. Section 305 of the Bankruptcy Code provides that after notice and hearing,[21] the court "may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—the interests of creditors and the debtor would be better served by such suspension; or there is pending a foreign proceeding; and the factors in section 304(c) of this title warrant such ... suspension."[22] To date, the protracted state court guardianship proceedings have caused enormous expense to the parties and to Debtor's estate. The Court is concerned with curbing additional expense and preserving judicial economy by suspending this reorganization effort until a final determination on the jurisdictional question concerning the guardianship proceedings is rendered.

Therefore, for all these reasons, the Court suspends this bankruptcy case until such time as the pending guardianship appeal has been resolved.

**CONCLUSION**

By nature, guardianship proceedings can be emotionally charged and difficult for all concerned parties—the record before this Court is certainly filled with the difficulties experienced by both the state court and by the parties in dealing with these guardianship proceedings. There are not many guidelines available to the court regarding the appointment process, and, for the most part, it is a subjective determination left to the sound discretion of the court, to the unhappiness, many times and obviously in this instance, of the parties. This Court believes a final resolution to the guardianship issue should be reached before the bankruptcy case proceeds any further.

---

**21.** The motion before the Court, noticed and heard as a motion to dismiss pursuant to 11 U.S.C. § 1307(c), satisfies the notice and hearing requirements stated in 11 U.S.C. § 305.

**22.** Section 304(c) states the court will be guided by what will best assure an economical and expeditious administration of the estate.

And so, having determined a proper filing was made; and having determined that a totality of circumstances does not support cause for dismissal under Section 1307(c); and, finally, having acknowledged that the existing question as to Chapter 13 eligibility can be dealt with following resolution of Respondents' pending appeal, the Court concludes that, pursuant to 11 U.S.C. § 305, now is the appropriate time to suspend this bankruptcy case and release the parties to proceed with the pending appeal.

The Court will enter an appropriate order.

### ORDER SUSPENDING CASE

Pursuant to the Court's Memorandum Decision entered this date regarding the motion to dismiss this bankruptcy case for "cause" as contemplated by 11 U.S.C. § 1307(c), it is hereby

ORDERED that this voluntary petition was properly filed in good faith and, based on a totality of circumstances, there is insufficient cause to dismiss the bankruptcy case. It is further

ORDERED that this bankruptcy case is suspended pursuant to 11 U.S.C. § 305 until a pending appeal relative to Debtor's state court guardianship proceeding has been finally adjudicated. For this reason, it is also

ORDERED that the automatic stay be modified to permit these parties to proceed with the appeal pending with the South Dakota Supreme Court.