**In re Charles Alexander "Z" BUDA d/b/a "Z" Buda Outlets d/b/a "Z" Buda's Smokies Campground d/b/a B & H Annette H. Buda a/k/a Marjorie Annette Buda, Debtors.**

No. 00–32317.

United States Bankruptcy Court, E.D. Tennessee.

July 20, 2000.

Robert M. Bailey, Bailey, Roberts & Bailey, P.L.L.C., Knoxville, TN, for Debtors.

Dan D. Rhea, Arnett, Draper and Hagood, Thomas S. Scott, W. Gordon Ball, Knoxville, TN, for Fred M. Holt.

## MEMORANDUM ON MOTION TO DISMISS CASE

RICHARD S. STAIR, Jr., Chief Judge.

Before the court is the Motion by Creditor to Dismiss Case filed June 22, 2000, by Fred M. Holt. The Debtors' Chapter 11 petition was filed on their behalf on June 12, 2000, by their Co–Conservators who were appointed by the Chancery Court for Sevier County, Tennessee, on July 30, 1999.[1] Mr. Holt seeks dismissal of the Debtors' case on the ground that the conservators lack the authority to file a bankruptcy petition or serve as debtors in possession. In the alternative, he asks the court to appoint a trustee pursuant to 11 U.S.C.A. § 1104(a) (West 1993). Mr. Holt and the Debtors have filed briefs in support of their positions. A hearing was held on July 13, 2000.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) (West 1993).

### I

On July 28, 1999, the Chancery Court entered an Order Appointing Co–Conservators by which it named Charles A. "Zandy" Buda, III (Mr. Buda) and George O. Haggard, Jr., as Co–Conservators over the property and person of Mr. Buda's father, Charles Alexander "Z" Buda, whom the court found to be "a disabled person suffering from degenerative dementia." That court entered a nearly identical order on July 30, 1999, by which it appointed Mr. Buda and Mr. Haggard as Co–Conservators for Mr. Buda's mother, Annette H. Buda.

Each Order Appointing Co–Conservators enumerated the following rights which the state court directed be transferred from the respondents, Charles Alexander "Z" Buda and Annette H. Buda, respectively, to the Co–Conservators:

(1) To collect all income and pay all expenses as required in the ordinary course of business for those assets and liabilities described in the financial statements filed with the Property Management Plan, and in accordance with said Plan.

(2) To pay monthly to Charles A. Zandy Buda III, such amounts as the said Co–Conservators determine from time to time is reasonably necessary for him to

1. Only one conservator initially signed the petition on the Debtors' behalf. The other joined the petition pursuant to an amendment filed July 6, 2000.

provide for day to day food; travel; entertainment; legal; accounting and other professional services; and Respondent's [Charles Alexander "Z" Buda and Annette H. Buda respectively] healthcare needs.

(3) The Co–Conservators are authorized to invest the Respondent's assets as described in and pay expenses enumerated in the Property Management Plan, which is incorporated herein by reference.

(4) The Co–Conservators shall not spend the Respondent's assets or income for purposes not set forth herein or enumerated in the Property Management Plan.

(5) The Co–Conservators shall submit accountings to the Court as required by law.

(6) The Co–Conservators shall inspect or cause to be inspected all financial books and records relating in any respect to Respondent's financial condition and activities.

(7) To the extent not limited or restricted in this order and in the Property Management Plan, and to the extent they may be relevant to a Conservatorship Estate, the Co–Conservators shall have those powers of fiduciaries as set forth at T.C.A. § 35–50–110.

Letters of Conservatorship relative to Charles Alexander "Z" Buda and Annette H. Buda, respectively, were issued on July 30, 1999. Neither of the Letters of Conservatorship bears an indication that the conservatorships are "Limited" in scope.

On June 12, 2000, Mr. Buda filed a voluntary Chapter 11 petition as Co–Conservator on behalf of his parents. On July 6, 2000, Co–Conservator George Haggard filed an Amendment to Bankruptcy Petition by which he explains that he was unavailable to sign the Debtors' petition, verifies the information provided in the petition, and asks to be listed as having signed the Debtors' petition as a Co–Conservator.

Mr. Holt describes himself as a close friend and business partner of Charles Alexander "Z" Buda. He is listed as a creditor holding an unsecured nonpriority claim, described as an "[a]lleged partnership interest," on Schedule F filed on June 12, 2000, and as a codebtor on the Debtors' Schedule H filed on July 3, 2000.

**II**

Mr. Holt contends that the Co–Conservators do not have the authority to file the Debtors' petition or to serve as debtors in possession on their behalf. He asks the court to dismiss the Debtors' case pursuant to 11 U.S.C.A. § 105(a) (West 1993) and § 1112 (West 1993 & Supp.2000). Pursuant to § 105(a), bankruptcy courts have the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C.A. § 105(a). Under § 1112(b), the court may, upon request of a party in interest, convert a Chapter 11 case to Chapter 7 or dismiss it, "whichever is in the best interest of creditors and the estate, for cause...." 11 U.S.C.A. § 1112(b). Cause is defined to include certain enumerated grounds none of which are relevant to the standing issue presently before the court.

**III**

 A court-appointed guardian may file a voluntary bankruptcy petition on behalf of an incompetent person if the guardian is authorized to do so.[2] *See In re Woods*, 248 B.R. 322, 323 (Bankr. W.D.Tenn.2000); *In re Smith*, 115 B.R. 84, 85 (Bankr.E.D.Va.1990) (finding that a court-appointed guardian may file a bankruptcy petition on behalf of a ward "provided the order appointing the guardian authorizes the guardian to file bankruptcy on the debtor's behalf") (citing *In re Clin-*

---

**2.** Incompetent persons are eligible for voluntary bankruptcy relief. *See In re Murray*, 199 B.R. 165, 167 (Bankr.M.D.Tenn.1996) (collecting cases).

*ton,* 41 F.2d 749, 750 (S.D.Cal.1930), and *In re Kirschner,* 46 B.R. 583 (Bankr. E.D.N.Y.1985)).[3] While the Chancery Court's orders defining the authority of the Co–Conservators provides them with a broad spectrum of powers, those orders do not explicitly grant them the authority to file a bankruptcy petition on behalf of the Debtors.

A few bankruptcy courts have determined that a guardian may file a bankruptcy petition without the explicit authorization of the appointing court. *See, e.g., Brown v. Financial Enters. Corp. (In re Hall),* 188 B.R. 476, 483 (Bankr.D.Mass. 1995) ("A guardian may file a bankruptcy petition on behalf of an incompetent person even if the guardian is not specifically authorized to do so."); *In re Zawisza,* 73 B.R. 929, 932–33 (Bankr.E.D.Pa.1987) ("We believe that a presumption of authority to file arises and hence we do not believe that explicit court authorization is necessary before a guardian may file bankruptcy on behalf of an incompetent, just as explicit court authorization is not needed in order for a guardian to take any other action on behalf of an incompetent with the exception, perhaps, of cessation of medical treatment or of extraordinary life preservation measures.").

■ State law governs the determination of who has the authority to file a bankruptcy petition on behalf of another. *See Wieczorek v. Woldt (In re Kjellsen),* 53 F.3d 944, 946 (8th Cir.1995) (regarding a Chapter 13 petition filed on behalf of an individual); *Keenihan v. Heritage Press, Inc.,* 19 F.3d 1255, 1258 (8th Cir.1994) (regarding a Chapter 11 petition filed on behalf of a corporation) (citing *Price v. Gurney,* 324 U.S. 100, 104–107, 65 S.Ct. 513, 516, 89 L.Ed. 776 (1945)); *In re American Globus Corp.,* 195 B.R. 263, 265 (Bankr.S.D.N.Y.1996) (regarding a Chap-

ter 11 petition filed on behalf of a corporation).

## IV

The court finds little authority under Tennessee law directly addressing the issue of whether a conservator must either have or obtain from the appointing court the specific authority to file a bankruptcy petition on behalf of a debtor. In *In re Burka,* 107 F. 674, 676 (W.D.Tenn.1901), the court suggested as dictum that "a regular guardian or committee might, with the sanction of the court appointing him, file a voluntary petition in behalf of an insolvent lunatic possibly."

More recently, in *In re Murray,* 199 B.R. 165, 166 (Bankr.M.D.Tenn.1996), the court determined that the mother of a minor child had the capacity to file a bankruptcy petition on behalf of her daughter, as her "next friend." The court did so without reference to state law. *See Murray,* 199 B.R. at 170–73. Instead, the court held that the petition was properly filed under FED.R.CIV.P. 17(c), which permits an appointed representative, such as a guardian or conservator, to sue or defend an action on behalf of an infant or incompetent person, and which permits a next friend to sue or defend such action where no representative has been appointed. *See id.* at 170–72. Although the court recognized that the Federal Rules of Bankruptcy Procedure incorporate Rule 17 in adversary proceedings only, the court found that Rule 17 may also apply to bankruptcy cases. *See id.* at 171–72. It reached that conclusion by invoking a "gap filling" rule in order to avoid the "odd outcome" that results from the incorporation of Rule 17 for adversary proceedings and contested matters only. *See id.* (citing FED.R.BANKR.P. 9029(b), which

---

**3.** The *Clinton* and *Kirschner* decisions involved state court orders made with the specific purpose of authorizing a guardian to file a bankruptcy petition on behalf of a ward. *See Clinton,* 41 F.2d at 749; *Kirschner,* 46 B.R. at 584. Thus, although those courts

found that a guardian may file a bankruptcy petition where a court order has authorized the filing, neither court considered the issue of whether explicit authority to do so is necessary. *See Clinton,* 41 F.2d at 749–51; *Kirschner,* 46 B.R. at 584 n. 1.

provides that it "permits the court to regulate practice in any manner consistent with federal law and with rules adopted under 28 U.S.C. § 2075, with Official Forms, and with the district's local rules," when there is no controlling law).

Although the Debtors before this court, through their Co–Conservators, stress the importance of the *Murray* decision, its helpfulness is limited because it includes no discussion of whether a court-appointed representative must first obtain permission from the appointing court before filing the petition, even though the issue of court approval was raised by the trustee in that matter. *See id.* at 166.

In *In re Woods,* 248 B.R. 322, 323 (Bankr.W.D.Tenn.2000), the court explained that "a guardian (or conservator) may file a voluntary bankruptcy petition for a debtor-ward, if authorized by the guardianship court (or perhaps the guardian)." There the court dismissed a Chapter 13 case in which "[n]either the conservator appointing court ... nor the conservator authorized the filing...." *Woods,* 248 B.R. at 323. In reaching its decision, the court cited *In re Kirschner,* 46 B.R. 583 (Bankr.E.D.N.Y.1985), and *In re Kjellsen,* 155 B.R. 1013 (Bankr.D.S.D. 1993). *See id. Kirschner* involved a Chapter 7 petition filed by a woman who had been "appointed guardian ad litem of her husband ... by the Supreme Court of the State of New York *for the purpose of* filing a petition in Bankruptcy." *Kirschner,* 46 B.R. at 584 (emphasis added). The woman was explicitly authorized to file the petition and that authority was not at issue. *See id.* The *Kirschner* decision, therefore, is not instructive on the issue of whether a conservator must first obtain specific authorization from the state court in order to file a bankruptcy petition.

In *Kjellsen,* the debtor's daughter filed a Chapter 13 petition for her mother and asserted that she had the ability to do so because she possessed a durable power of attorney for her mother. *See Kjellsen,* 155

B.R. at 1016. The guardian of the debtor's estate asked the court to dismiss the petition on the ground that the guardian had the exclusive ability to file the petition. *See id.* The court's summary of the facts does not indicate whether the state court that had appointed the guardian had specified that the guardian had the power to file a petition on behalf of the debtor. *See id.* at 1015–16. The bankruptcy court determined that the guardian did not have the exclusive ability to file a bankruptcy petition and that the petition had been properly filed by the daughter under the durable power of attorney. *See id.* at 1022.

The matter reached the Court of Appeals for the Eighth Circuit which affirmed the district court's reversal of the bankruptcy court's decision. *See Kjellsen,* 53 F.3d at 945. The Eighth Circuit looked to state law to determine who had the authority to file the bankruptcy petition on behalf of the debtor. *See id.* at 946. It determined that under state law the guardian had "exclusive control over [the debtor's] property." *Id.* From there the court simply concluded that "[a]s bankruptcy proceedings concern the disposition of property ... and as [the guardian] had exclusive control over [the debtor's] property, [the daughter and the debtor] necessarily lacked authority to file the bankruptcy petition." *Id.* Again, the *Kjellsen* case is of limited helpfulness because the court did not directly address the issue of whether the guardian, by virtue of that exclusive control, had the authority to file a petition without first obtaining the explicit authorization of the state court that had appointed the guardian. *See id.*

■ In Tennessee, a conservator's authority to act on behalf of another is granted by a state court, the scope of a particular conservator's authority is defined by the orders entered by that appointing court, and the state's statutes govern that authority. *See* TENN.CODE ANN. § 34–13–107 (1996). Further, state law determines who may file a bankruptcy petition on behalf of another. *See Kjellsen,* 53

F.3d at 946. Thus, while the *Murray, Kjellsen,* and *Woods* decisions hold that a guardian, conservator, or next friend may file a bankruptcy petition on behalf of another, they did not resolve the fundamental issue facing this court as to whether a particular representative indeed has the authority to do so. To resolve that issue, this court must, again, look to Tennessee law.

## V

■ Under Tennessee law, a court may enter an order appointing a conservator or conservators where needed. *See* TENN. CODE ANN. § 34–13–107. Such orders shall, among other things, "[e]numerate the powers removed from the respondent and vested in the conservator." *Id.* at (2). The respondent retains all powers that are not specifically removed. *See id.* In addition, § 34–13–107 provides that the order appointing a conservator shall "[p]rohibit the sale of any property except as permitted by § 34–11–116(b) without prior court approval or as permitted in the property management plan approved by such order...." *Id.* at (3)(D).[4] Where a conservatorship is limited in scope, that fact must be indicated prominently on the letters of conservatorship. *See* TENN. CODE ANN. § 34–11–129 (1996).

■■ Tennessee courts have explained that "the purpose of a conservatorship proceeding is to protect the person and property of a disabled person." *See Salvatore v. Clayton (In re Conservatorship of Clayton),* 914 S.W.2d 84, 90 (Tenn.Ct.App.1995) (citing *Walker v. Graves,* 174 Tenn. 336, 125 S.W.2d 154, 156 (1941) and TENN. CODE ANN. § 34–13–107(3) and (4)).

Throughout a conservatorship, "courts are ultimately responsible for the property of persons for whom they appoint conservators or guardians." *Id.* at 92. "They retain continuing control over guardians and conservators because the persons who accept these appointments become 'quasi-officials' of the court appointing them." *Id.*

In *Grahl v. Davis,* 971 S.W.2d 373, 377 (Tenn.1998),[5] the Supreme Court of Tennessee reviewed "the fiduciary duties which govern the actions of a conservator":

A conservator occupies a fiduciary position of trust of the highest and most sacred character. The conservator is to manage the conservatee's estate to the best advantage. The conservator should endeavor to manage the estate so that if the incompetent person recovers, he or she will find the estate as nearly as possible in the same condition as he or she left it. A conservator should not change the character of the conservatee's property interests unless the change is necessary to protect and promote the interests of the conservatee....

A conservator is not the alter ego of the conservatee, however, and has no authority to exercise an elective right or power of the conservatee. Therefore, a conservator has no authority to terminate joint accounts in which the conservatee has an interest or to change a beneficiary on a life insurance policy. Instead, the conservator must petition the court, and the court, on behalf of the conservatee, can exercise such an election if it is clearly proven to be in the best interests of the conservatee.

TENN.CODE ANN. § 34–11–116(b) (1996).

---

4. Subsection 34–11–116(b) provides:
 Unless the fiduciary is holding tangible property for the benefit of a minor or disabled person pursuant to the terms of a will, trust, or other written document, the fiduciary has the authority to sell each item of tangible property with a fair market value of less than one thousand dollars ($1,000) or a motor vehicle without specific court approval.

5. The court acknowledged that the case before it cited statutory sections, TENN.CODE ANN. §§ 34–4–101 through 34–4–310, which had been repealed and replaced in 1993 by TENN.CODE ANN. §§ 34–11–101 through 34–13–109, but believed that "the new law would not change the outcome of [the] appeal." 971 S.W.2d at 377 n. 2.

. . . .

. . . Even if a conservator deems it necessary to change the character of property to meet the needs of the conservatee, the appropriate course of action is to seek court approval.

*Id.* at 377–378 (citations omitted).

## VI

In the present matter, the Chancery Court's orders removed from the Debtors and transferred to the Co–Conservators the Debtors' powers with regard to collecting income and paying expenses in the ordinary course of business, possessing and using funds necessary to provide for the Debtors' personal expenses, investing the Debtors' assets, and inspecting financial records.[6] In addition, the court transferred to the Co–Conservators the powers of fiduciaries as set forth in TENN.CODE ANN. § 35–50–110 (Supp. 1999). Those powers include, among several others, the power to perform the Debtors' duties under executory contracts, to exercise exclusive possession and control over the Debtors' assets, to sell and lease such property,[7] to borrow money and secure loans with such property, to enter into contracts binding the Debtors, to compromise claims of or demands against the Debtors, to release security interests held by the Debtors, to abandon the Debtors' property or claims as worthless, and to bring or defend actions involving the assets or interests of the Debtors. *See id.* Further, § 35–50–110 authorizes fiduciaries, and in this matter, the Co–Conservators,

To do any and all other things, not in violation of any other terms of this instrument, which, in the judgment of the fiduciary, are necessary or appropriate for the proper management, investment and distribution of the assets of the estate in accordance with the provisions of this instrument, and in such fiduciary's judgment are for the best interests of the estate and its beneficiaries.

*Id.* at (33).

Finally, there is no indication on the Letters of Conservatorship that the conservatorships are limited in scope.

## VII

The powers transferred by the Chancery Court from the Debtors to the Co–Conservators are broad. The powers listed individually therein and those incorporated by reference to § 35–50–110 include some of the very types of powers that a debtor in possession would need to conduct its affairs under Chapter 11. Nowhere, however, in the Chancery Court's orders or in § 35–50–110 is the word "bankruptcy" mentioned.

Mr. Holt argues that the Co–Conservators do not have the authority to file the Debtors' petition because the Chancery Court's orders and § 35–50–110 do not specifically grant such authority, citing § 34–13–107 which provides that all powers not specifically removed to a conservator remain in the respondent.

The Debtors, through their Co–Conservators, argue that Mr. Holt's conclusion leads to an absurd result. They argue that if the court dismisses the Debtors' case because the Chancery Court did not use the word "bankruptcy" the court would create a situation in which the Debtors would possess the sole authority to file a bankruptcy petition but lack the authority necessary to conduct the bankruptcy, as all the powers listed in the orders and in § 35–50–110 have been removed from them. Simultaneously, the Co–Conservators would have the exclusive control over the Debtors' assets and liabilities, and those other powers specifically listed in the orders and in § 35–50–110, yet lack the

6. *See supra* pp. 126–127.

7. Under TENN. CODE ANN. § 34–13–107(3)(D), a conservator must first seek the approval of a court before selling property unless the property is a motor vehicle or has a fair market value of less than $1,000.00. *See supra* pp. 129–130.

authority to use those powers within the context of the Bankruptcy Code because they could not file a petition.

Mr. Holt also contends that the filing of a petition in bankruptcy is a drastic measure and is tantamount to the sale of property because it places a debtor's property, with some exceptions, in a bankruptcy estate. Thus, he argues, the filing of a bankruptcy petition should be treated like a sale of property when considering the authority of a conservator. He concludes that a conservator must seek court approval before filing a bankruptcy petition just as a conservator must seek court approval before selling property with a market value over $1,000.00 under § 34–13–107(3)(D).

■ The court is not persuaded by Mr. Holt's argument that the filing of a bankruptcy petition is tantamount to a sale of property. Although the filing of a petition creates a bankruptcy estate comprised of a debtor's property pursuant to 11 U.S.C.A. § 541(a) (West 1993), the debtor's property is revested in the debtor by the confirmation of a Chapter 11 plan pursuant to 11 U.S.C.A. § 1141(b) (West 1993). Thus, the filing of a bankruptcy petition is clearly distinguishable from a sale of property and is not subject to § 34–13–107(3)(D).

■ Neither is the court persuaded, however, by the Debtors' argument that the dismissal of their case would lead to an absurd result. Should the court dismiss the case, the Co–Conservators may petition the Chancery Court for the authority to file a bankruptcy petition on behalf of the Debtors. Further, under § 34–13–107, *Clayton,* and *Grahl,* the court concludes that this is the appropriate course of action in this matter.

It may seem that the authority to file a petition in bankruptcy would be encompassed by the numerous powers and authorities specifically granted to the Co–Conservators in the Chancery Court's orders. In light of § 34–13–107 and the basic principles of conservatorship illuminated in the *Clayton* and *Grahl* decisions,

however, the court cannot rely on inference to determine that the Co–Conservators have the authority to file the Debtors' bankruptcy petition.

It may also seem that the authority to file a bankruptcy petition could be based on § 35–50–110(33), which empowers the fiduciary to rely on his or her own judgment and do whatever the fiduciary believes is in the best interests of the conservatee. By its terms, however, § 35–50–110(33) is limited by the incorporating instrument. Here, those instruments are the Chancery Court's July 29 and 30, 2000 orders. Those orders incorporate § 35–50–110 only to the extent that it is compatible with the orders. Those orders are governed by § 34–13–107. Section 34–13–107 requires unequivocally that a conservator receives only those powers specifically transferred to it. Thus, while the Co–Conservators could rely on the catch-all provision in § 35–50–110(33) in order to exercise the necessary judgment to do what they believe to be in the conservatee's best interest *with respect to the powers transferred to them* by the order, the court is not convinced that they may use that provision to *expand* the powers transferred to them beyond those specifically mentioned in the order in contravention of § 34–13–107.

Finally, the court acknowledges that there is no indication on the Letters of Conservatorship that either conservatorship is "limited" in scope. The limitation statute appears at § 34–11–129, which applies generally to both guardianships and conservatorships. That provision simply states that

Upon the entry of the order appointing a fiduciary and the submission of a bond consistent with such order, the clerk will issue letters of conservatorship or letters of guardianship. If the fiduciary has been granted less than full authority over the person or property of the minor or disabled person in the order of appointment, the clerk shall mark the let-

ters prominently with the term "LIMIT-ED."

The court finds no authority construing § 34–11–129 and the parties advance none. That provision is in tension with § 34–13–107, applying specifically to conservatorships, which limits every conservatorship to those powers specifically enumerated in the order authorizing the conservatorship. It is also in tension with the general principles of conservatorship as analyzed in the *Grahl* and *Clayton* decisions, which were decided after the 1992 enactment of § 34–11–129. The court is not persuaded that § 34–11–129 implies an unspecified authorization to file a bankruptcy petition.

The filing of a bankruptcy petition is a significant act with numerous and substantial consequences. The *Clayton* and *Grahl* decisions make clear that the Chancery Court bears the ultimate responsibility to preserve the Debtors' property; that the Co–Conservators are not the alter egos of the Debtors, but instead are agents of the Chancery Court; that the Chancery Court retains ongoing control over the Debtors and the Co–Conservators; that the character of the Debtors' property should remain as they left it, unless a change is in the best interests of the Debtors and preservation of their property; and that the determination regarding the Debtors' best interests is one for the Chancery Court. With that in mind, the court finds that a dismissal is compelled on the grounds that § 34–13–107 mandates that all powers not specifically transferred to a conservator are retained by the conservatee; that there has been no specific transfer of the authority to file a bankruptcy petition; and that dismissal of this case on that ground will not deprive the Debtors, acting by their Co–Conservators, of the opportunity to file a bankruptcy petition if and when the Chancery Court specifically authorizes the Co–Conservators to do so.

## VIII

In summary, the authority of the Co–Conservators of the Debtors is limited to those specified in the Chancery Court's order by virtue of TENN.CODE ANN. § 34–13–107. There has been no specific transfer to the Co–Conservators of the authority to file a petition in bankruptcy on the Debtors' behalf. Thus, the Co–Conservators lacked the authority to file the Debtors' petition and it must be dismissed. The court need not consider Mr. Holt's alternate request for the appointment of a trustee.